IN THE SUPREME COURT OF NORTH CAROLINA

No. 235PA23

Filed 22 August 2025

THURMAN CROFTON SAVAGE

v.

N.C. DEPARTMENT OF TRANSPORTATION

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, No. COA22-673 (N.C. Ct. App. Aug. 15, 2023), reversing a final decision entered on 20 April 2022 by Administrative Law Judge J. Randolph Ward in the Office of Administrative Hearings. Heard in the Supreme Court on 25 February 2025.

*Ben G. Irons II for petitioner-appellant.*

*Jeff Jackson, Attorney General, by Jonathan J. Evans, Assistant Attorney General, and Kathryne E. Hathcock, Special Deputy Attorney General, for respondent-appellee.*

DIETZ, Justice.

At its heart, this case presents a rather straightforward question of statutory interpretation. Before we get there, however, we first must address who decides that question.

Several decades ago, parroting federal law, the Court of Appeals held it "a tenet of statutory construction that a reviewing court should defer to the agency's interpretation of a statute it administers so long as the agency's interpretation is

reasonable and based on a permissible construction of the statute." *County of Durham v. N.C. Dep't of Env't & Nat. Res.*, 131 N.C. App. 395, 397 (1998) (cleaned up).

We never approved this interpretive rule and it directly conflicts with our own precedent requiring courts to review questions of law de novo. Accordingly, we expressly disavow any rule requiring courts to defer to an agency's interpretation of a statute, overrule any previous Court of Appeals case law to the contrary, and instruct all lower courts to apply traditional de novo review to the interpretation of state statutes.

Having clarified the appropriate standard of review in this case, we hold that the Court of Appeals erred in its statutory interpretation for the reasons explained below. We therefore reverse the judgment of the Court of Appeals and remand to that court for consideration of the remaining, unresolved issues on appeal.

**Facts and Procedural History**

In 2018, the North Carolina Department of Transportation hired Thurmon Crofton Savage as a "driver education program specialist," a job responsible for training, certifying, and recertifying school bus drivers.

To drive a school bus in North Carolina, a driver must possess several specialized licenses and certifications. N.C.G.S. § 20-218(a) (2023). First, the driver must possess a commercial driver's license, which requires knowledge and road testing beyond that of an ordinary driver's license. *See id.*; N.C.G.S. § 20-37.13. Second, the driver must possess two commercial driver's license "endorsements," one

for passengers and one for school buses, both of which require even more knowledge or skill testing. *See* N.C.G.S. §§ 20-218(a), -37.16(c). Finally, the driver must receive a school bus driver's "certificate," which is a separate credential from the driver's license and involves testing and observation by a driver education program specialist like Savage. *See* N.C.G.S. § 20-218(a).

Relevant to this case, renewal of an existing school bus driver's certificate is less onerous than initial certification. *Compare* 19A N.C. Admin. Code 3G.0205 (governing initial certification), *with* 19A N.C. Admin Code 3G.0207 (governing renewal). For drivers with a good safety record, the renewal process involves a program specialist like Savage conducting what amounts to an informal ride-along in which the driver demonstrates various skills such as proper passenger pick-up and drop-off, proper railroad crossing, and proper backing-up maneuvers. *See* 19A N.C. Admin. Code 3G.0207.

In 2019, the Department of Transportation became concerned that Savage had recertified some school bus drivers without conducting the required ride-along observations. During the department's investigation, Savage admitted that he recertified five bus drivers without performing those observations.

The department promptly terminated Savage's employment, stating in its final agency decision that it did so because Savage had engaged in various forms of unacceptable personal conduct such as "violation of known or written work rules" and "conduct unbecoming a State employee that is detrimental to State service." In

addition, the department informed Savage that his actions violated N.C.G.S. § 20-34.1, a criminal statute that makes it a felony to knowingly enter "false information concerning a drivers license or a special identification card" into certain department records. N.C.G.S. § 20-34.1(a)(3). That statute also provides that any employee who violates the statute "shall be dismissed from employment." *Id.* § 20-34.1(c). Relying on this provision, the department informed Savage that his termination was required by law and not a matter over which the department had any discretion.

Savage timely petitioned for a contested case hearing at the Office of Administrative Hearings. An administrative law judge determined that the department did not have just cause to terminate Savage's employment. First, the ALJ determined that the plain language of N.C.G.S. § 20-34.1 did not apply to Savage's conduct because the information he submitted was not "concerning a drivers license" and instead concerned the separate credential needed to drive a school bus. Second, the ALJ determined that the department "failed to meet its burden of proof that just cause exists" to terminate Savage's employment and instead ordered the department to impose a lesser sanction.

The department timely appealed the ALJ's ruling to the Court of Appeals, which reversed the ALJ's final decision. *Savage v. N.C. Dep't of Transp.*, No. COA22-673, slip op. at 5 (N.C. Ct. App. Aug. 15, 2023) (unpublished). The Court of Appeals explained that "to operate a school bus in North Carolina, a driver must possess a commercial driver's license *and* be certified/recertified as a school bus driver by

meeting other criteria." *Id.* at 4. Thus, the court reasoned, any false information about the school bus driver's certificate was "concerning a driver's license" because that information was ultimately entered in the same department database that houses driver's license information. *Id.* at 4–5. Because the court's interpretation of that criminal statute meant Savage's termination was mandatory, the Court of Appeals did not reach the remaining portions of the ALJ's decision concerning just cause.

Savage then petitioned this Court for discretionary review, arguing that the Court of Appeals wrongly deferred to the department's interpretation of the statute and that the statute did not apply to Savage's conduct. We allowed the petition to review those questions.

## Analysis

### I. Standard of review and rejection of agency deference

We begin by examining the applicable standard of review for this statutory interpretation question. Savage contends that the Court of Appeals wrongly "deferred" to the Department of Transportation's legal interpretation of the applicable statute. In other words, Savage believes the Court of Appeals failed to properly examine the legal question presented in this appeal and instead permitted an executive-branch agency to decide that legal question for it.

Savage argues that this practice, although it has some basis in Court of Appeals case law, is an improper abdication of the court's role to say what the law is. In a memorandum of additional authorities after briefing, Savage also directed this

Court to a recent ruling by the Supreme Court of the United States abandoning this type of deference in federal law. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024). Savage argues that this deference, now disavowed under federal law, has no place in state law either.

We are not persuaded that the Court of Appeals in this case engaged in the sort of deference Savage describes. But we agree with Savage that there is quite a bit of confusion on this issue at the Court of Appeals. We therefore take this opportunity to clarify the law.

This Court has long held that "questions of statutory interpretation are ultimately questions of law for the courts and are reviewed de novo." *In re Summons Issued to Ernst & Young, LLP*, 363 N.C. 612, 616 (2009). "De novo" is a Latin phrase meaning "fresh" or "anew." *Taylor v. Bank of Am., N.A.*, 382 N.C. 677, 679 (2022). Thus, when reviewing a matter de novo, the reviewing court "considers the matter anew and freely substitutes its own judgment for that of the lower courts." *In re McClatchy Co., LLC*, 386 N.C. 77, 85–86 (2024) (cleaned up). This is not to say that a lower court's reasoning is worthless; to the contrary, it will often be instructive. The point is that, under de novo review, the reviewing court is never bound by a lower court's interpretation of the law. *Id.*

The same is true when a court is reviewing a state agency's interpretation of a statute. Under de novo review, the reviewing court must "consider a question anew, as if not considered or decided by the agency previously . . . and cannot defer to the

agency its duty to do so." *N.C. Dep't of Env't & Nat. Res. v. Carroll*, 358 N.C. 649, 660 (2004) (cleaned up).

This "de novo" standard of review makes particular sense when reviewing an executive-branch agency's interpretations of a statute. This Court has long held that a core part of state judicial power is the authority to say what the law is. *White v. Worth*, 126 N.C. 570, 582 (1900). Thus, it "is the exclusive right of the judiciary" to interpret laws enacted by the General Assembly and "neither the executive nor the legislative department has any such power."[1] *Id.* at 582, 584.

In light of this longstanding "de novo" approach to statutory interpretation, it is quite bizarre to imagine North Carolina law compelling courts to adopt the legal interpretation of executive-branch agencies. But over the past few decades, this notion has quietly crept into the Court of Appeals jurisprudence.

The origin is federal law. Beginning in the 1980s, the Supreme Court of the United States created what became known as "*Chevron* deference." *See Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), *overruled by*, *Loper Bright Enters.*, 144 S. Ct. 2244. The gist of *Chevron* was that, if a statute was "silent or ambiguous" on a particular statutory question, courts must defer to the

---

[1] Of course, the North Carolina Constitution permits the General Assembly to "vest in administrative agencies established pursuant to law such judicial powers as may be reasonably necessary as an incident to the accomplishment of the purposes for which the agencies were created." N.C. Const. art. IV, § 3. Thus, in certain circumstances, state agencies possess the constitutional authority to say what the law is, subject to review by the courts. But when this occurs, the administrative agency is engaged in a judicial function, not an executive one. *Id.*

administering federal agency's interpretation of the statute, provided that the agency interpretation was a "permissible construction of the statute." *Chevron*, 467 U.S. at 843. In other words, there were circumstances where, applying *Chevron* deference, courts were compelled to adopt an executive-branch agency's interpretation of federal law even when, without that compelled deference, the court would have chosen a different interpretation. *Loper Bright Enters.*, 144 S. Ct. at 2264.

This Court never adopted *Chevron* deference as a tool to interpret state law. Nevertheless, it found its way to the Court of Appeals. In the late 1990s, the Court of Appeals held it "a tenet of statutory construction that a reviewing court should defer to the agency's interpretation of a statute it administers so long as the agency's interpretation is reasonable and based on a permissible construction of the statute." *County of Durham*, 131 N.C. App. at 397 (cleaned up). Where did the Court of Appeals find this "tenet" of North Carolina law? *Chevron*. Trace back the citations in these cases and they all begin with examination of federal law and a reference to *Chevron*, 467 U.S. 837.

As *Chevron* deference crept into Court of Appeals jurisprudence, advocates of the doctrine found snippets of this Court's case law that they believed were an endorsement. Take, for example, this Court's statement in *High Rock Lake Partners* that courts must "give great weight to an agency's interpretation of a statute it is charged with administering." *High Rock Lake Partners, LLC v. N.C. Dep't of Transp.*, 366 N.C. 315, 319 (2012). That certainly sounds deferential. But in that same

paragraph, this Court quoted earlier cases holding that it "is ultimately the duty of courts to construe administrative statutes; courts cannot defer that responsibility to the agency charged with administering those statutes." *Id.* (quoting *Wells v. Consol. Jud. Ret. Sys.*, 354 N.C. 313, 319 (2001)). We also added for emphasis that, whatever weight we might give an agency's interpretation, "an agency's interpretation is not binding." *Id.* (quoting *Lee v. Gore*, 365 N.C. 227, 229 (2011)). Those statements are a refutation of *Chevron* deference, not an endorsement.

Recently, we were even more explicit. In a case concerning the interpretation of a tax statute, we rejected the notion that affording "due consideration" to the Department of Revenue's interpretation of a tax statute altered this Court's de novo review. *Philip Morris USA, Inc. v. N.C. Dep't of Revenue*, 386 N.C. 748, 760 (2024). We instead reaffirmed "previous precedent repudiating agency deference when the question is one of law" and requiring a reviewing court to "freely substitute its judgment for that of the agency and employ *de novo* review." *Id.* (cleaned up).

Thus, our precedent shows that *Chevron* deference is not permissible when interpreting state law, and it never was. When this Court speaks of affording "due consideration" or "great weight" or any other form of "deference" to the interpretation of state agencies or lower courts, this means only that we will consider and respect their reasoning. After all, the view of others tasked with interpreting the law always can *inform* our judgment. *Gill v. Bd. of Comm'rs*, 160 N.C. 176, 188 (1912). What it cannot do is *control* our judgment.

One final note before we turn to the parties' arguments in this case: *Chevron* deference at the federal level is dead. *See Loper Bright Enters.*, 144 S. Ct. at 2273. In *Loper Bright*, the Supreme Court of the United States expressly overruled *Chevron* and held that courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority" and "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* Thus, to the extent that the Court of Appeals once relied on *Chevron* as the foundation for its own experiment with agency deference under state law (an experiment that this Court never approved), that foundation has collapsed.

Thus, for clarity, we expressly disavow the use of *Chevron*-style agency deference when interpreting state statutes, overrule any previous Court of Appeals case law to the contrary, and instruct all lower courts to apply traditional de novo review to the interpretation of state statutes.

## II.     Interpretation of N.C.G.S. § 20-34.1

Having reaffirmed the appropriate de novo standard of review for statutory interpretation, we now apply that standard in this case.

This appeal turns entirely on the proper interpretation of N.C.G.S. § 20-34.1, a criminal statute making it a felony to knowingly enter false information concerning a driver's license into certain department records and requiring the immediate dismissal of any employee who does so:

> **§ 20-34.1. Violations for wrongful issuance of a drivers license or a special identification card.**

(a) An employee of the Division or of an agent of the Division who does any of the following commits a Class I felony:

. . . .

(3) Knowing it is false, enters false information concerning a drivers license or a special identification card in the records of the Division.

. . . .

(c) **Dismissal.** — An employee of the Division who violates this section shall be dismissed from employment and may not hold any public office or public employment in this State for five years after the violation.

N.C.G.S. § 20-34.1.

The Department of Transportation argues that Savage violated this statute when he entered false information concerning school bus driver's certificates into the department's records. The department concedes that a school bus driver's certificate is not a "drivers license."[2] But the department, through a rather convoluted series of statutory cross-references, argues that the certificate is still part of the statutory "license" necessary to be a school bus driver.

First, the department points to a statutory provision requiring a driver to "be at least 18 years of age and hold a Class A, B, or C commercial drivers license and a

---

[2] The applicable statutes use "drivers license" and "driver's license" interchangeably with the same meaning, as do many other provisions within Chapter 20 of the General Statutes. *See, e.g.*, N.C.G.S. § 20-4.21 ("Drivers License Compact"); N.C.G.S. § 20-5 ("Uniform Driver's License Act").

school bus driver's certificate" in order to drive a school bus:

> **§ 20-218. Standard qualifications for school bus drivers; speed limit for school buses and school activity buses.**
>
> (a) **Qualifications.** — . . . The driver of a school bus must be at least 18 years of age and hold a Class A, B, or C commercial drivers license and a school bus driver's certificate. . . .
>
> . . . .
>
> (c) **Punishment.** — A person who violates this section commits a Class 3 misdemeanor.

N.C.G.S. § 20-218. Based on this statute, the department asserts that a "school bus driver in North Carolina is required to have, along with a commercial license and proper endorsements, a school bus driver's certificate in order to drive a school bus."

Next, the department points to the definition of the word "license" in the motor vehicle statutes. *See* N.C.G.S. § 20-4.01(17). That definition includes not only a "driver's license" but also "any other license or permit to operate a motor vehicle":

> **§ 20-4.01. Definitions.**
>
> Unless the context requires otherwise, the following definitions apply throughout this Chapter to the defined words and phrases and their cognates:
>
> . . . .
>
> (17) License. — Any driver's license or any other license or permit to operate a motor vehicle issued under or granted by the laws of this State including:
>
> a. Any temporary license or learner's permit;

> b. The privilege of any person to drive a motor vehicle whether or not such person holds a valid license; and
>
> c. Any nonresident's operating privilege.

N.C.G.S. § 20-4.01.

Combining these two statutory provisions together, the department argues that a school bus driver's certificate satisfies the statutory definition of a "license" because it is needed, in addition to a commercial driver's license, to obtain the privilege of operating a school bus. Thus, the department argues, when Savage entered false information about this "license" into department records, he violated the criminal provisions of N.C.G.S. § 20-34.1.

This argument has a fatal flaw: N.C.G.S. § 20-34.1 does not apply to every type of "license" as that term is defined in N.C.G.S. § 20-4.01(17). The statute only applies to information concerning "a drivers license." N.C.G.S. § 20-34.1(a). This is a crucial distinction because, even under the department's interpretation of these statutes, a driver's license is only one subset of the many types of driving privileges that meet the broader statutory definition of a "license." *See* N.C.G.S. § 20-4.01(17).

In other words, the General Assembly created a broad, statutory definition for the term "license" but then chose *not* to use that defined term in this particular statute, instead opting for the narrower term "drivers license." We must presume that this word choice was an intentional one. *See N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 201 (2009). Thus, a school bus driver's certificate might be a type of

statutory "license," but it is not a "drivers license" for purposes of N.C.G.S. § 20-34.1.

Notably, even the Court of Appeals did not accept the department's argument. Instead, the Court of Appeals reached the same result through a different statutory analysis. The court explained that "to operate a school bus in North Carolina, a driver must possess a commercial driver's license *and* be certified/recertified as a school bus driver by meeting other criteria." *Savage*, slip op. at 4. Thus, the court reasoned, Savage entered false information "concerning" a driver's license because of two factors: first, the falsified recertifications are a requirement to drive a school bus, just like a commercial driver's license; and second, Savage entered that false information into the same database that stores driver's license information. *Id.* at 4–5.

This reasoning has its underlying logic backwards. Yes, a school bus driver's certificate is required to drive a school bus. So, too, is a commercial driver's license. But that does not mean information about one is somehow "concerning" the other. These are two separate state-issued credentials with their own separate standards and qualifications. *Compare* N.C.G.S. § 20-37.13 (2023) (commercial drivers license qualification standards), *with* N.C.G.S. § 20-218 (standard qualifications for school bus drivers). Thus, only false information relating to a commercial driver's license renewal is "concerning" that driver's license. False information relating to a school bus driver's certificate, by contrast, is "concerning" that separate driving credential.

Our interpretation is further supported by the General Assembly's decision to criminalize only "false information concerning a drivers license or a special

identification card." N.C.G.S. § 20-34.1(a)(3). There is something unique about these two state-issued documents that separates them from other government "licenses" such as a school bus driver's certificate: a driver's license and a special identification card are forms of legal identification. *See, e.g.*, REAL ID Act of 2005, Pub. L. No. 109-13, §§ 201–02, 119 Stat. 302, 311–15 (2005); N.C.G.S. § 163-166.16(a)(1) (governing voter ID). Thus, the text of the statute indicates that the legislature was focused on criminalizing conduct that leads to the issuance of fake or illegal government IDs, not the falsification of supplemental driving credentials. We therefore hold that N.C.G.S. § 20-34.1 does not apply to the conduct alleged in this case and reverse the judgment of the Court of Appeals.

This is not the end of this case, however. The department also asserted that there was just cause to terminate Savage's employment even without the mandatory termination requirement of N.C.G.S. § 20-34.1. The ALJ rejected this argument and ruled that the department "failed to meet its burden of proof that just cause exists" to terminate Savage's employment. The department challenged this ruling on appeal, but the Court of Appeals did not reach the issue because it found its analysis of N.C.G.S. § 20-34.1 to be "dispositive." *Savage*, slip op. at 3. We therefore remand this case to the Court of Appeals to address the department's remaining arguments. *See Va. Elec. & Power Co. v. Tillett*, 316 N.C. 73, 76 (1986).

## Conclusion

We reverse the judgment of the Court of Appeals and remand for further

proceedings.

REVERSED AND REMANDED.

Justice BARRINGER concurring.

I fully join the majority. I write separately to underscore the indispensable function the judiciary serves in our constitutional framework—one that is incompatible with the doctrine of agency deference.

Since its inception, the judiciary has been charged with interpreting the law. *See White v. Ayer*, 126 N.C. 570, 582 (1900) ("[W]hile it is the exclusive right of the legislative department to enact laws and the duty of the executive to enforce them, it is the exclusive right of the judiciary to construe them . . . ."). Indeed, "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803); *White*, 126 N.C. at 583 (quoting the same). Deference to either the executive department or the legislative department violates this time-honored aphorism. "For [deference] would violate a fundamental principle of separation of powers—that the power to write a law and the power to interpret it cannot rest in the same hands." *Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 619 (2013) (Scalia, J., concurring in part and dissenting in part).

Grounded in this fundamental canon, I take this opportunity to strongly endorse this Court's disavowal of the agency deference doctrine; it has no place in the independent decision-making authority of the judiciary. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2274 (2024) (Thomas, J., concurring) ("By tying a judge's hands, [agency deference] prevents the Judiciary from serving as a constitutional

check on the Executive.").

Justice EARLS concurring in part and dissenting in part.

I agree with the majority's conclusion that the statute at issue here, N.C.G.S. § 20-34.1, is properly read to apply to a driver's license only and not the school bus driver's certificate renewed by Mr. Savage.

To the extent that the concurring opinion herein by Justice Barringer articulates a definition of the proper weight to give agency interpretations of statutes they administer that differs from this Court's longstanding approach of applying *Skidmore* deference while conducting de novo review, I continue to adhere to the view I articulated in my dissenting opinion in *Sound Rivers, Inc. v. N.C. Department of Environmental Quality*, 385 N.C. 1, 13 (2023) (Earls, J., dissenting). *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). This potentially is a glass half-full, glass half-empty debate, but I think it important for the judicial branch to have appropriate respect for the work of administrative agencies, while still exercising its "role 'to say what the law is.' " *Arter v. Orange County*, 386 N.C. 352, 357 (2024) (quoting *White v. Worth,* 126 N.C. 570, 583 (1900)); *see also* N.C. Const. art. IV, § 12.

While "[d]e novo review does not blind us to context or demand unquestioned deference to an agency's views," we also should not completely disregard agency expertise. *Sound Rivers*, 385 N.C. at 13. The appropriate balance is struck when we weigh the "thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those

factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140; *see also In re Appeal of N.C. Sav. & Loan League,* 302 N.C. 458, 466 (1981) (employing *Skidmore* deference); *N.C. Acupuncture Licensing Bd. v. N.C. Bd. of Physical Therapy Exam'rs*, 371 N.C. 697, 703 (2018) (deferring to an agency's statutory interpretation in large part because it based its reasoning on an "extensive review" of "substantial studies and other evidence," including "scientific articles, reports, and books"). Fundamentally, this is a question of whether courts consistently apply neutral, transparent, and meaningful standards in every case or engage in standardless, unfettered, and outcome-determined discretion. The former promotes the rule of law while the latter is a might makes right regime.

Finally, I dissent from the majority's decision to remand this case to the Court of Appeals to determine in the first instance whether there was just cause to terminate Mr. Savage's employment. It is unfair to the parties to continue to drag out this litigation. We have all the same facts in the record as will be before the Court of Appeals, and we are perfectly able to resolve that question in this case. We should do so.

Justice RIGGS joins in this concurring in part and dissenting in part opinion.