ED DEATON v. LEWIS D. COBLE.

(Filed 12 December, 1956.)

**1. Frauds, Statute of, § 5—**

A memorandum stating that defendant owed a stipulated sum to a certain person for plumbing and heating work on a house and that defendant "agreed to" plaintiff "$1000.00 of this amount when I pay off" *is held* insufficient under the statute of frauds to charge defendant with the debt due by the third person to plaintiff, there being no special promise to answer for the debt of the third person. G.S. 22-1.

**2. Evidence § 40—**

While parol evidence is incompetent to contradict an unambiguous written instrument, where the writing is insufficient to constitute a legally effective instrument, parol evidence is competent to show facts which would render the writing inoperative or unenforceable.

**3. Appeal and Error § 42—**

Where the parties do not object to the issues submitted, an exception to the charge on the ground that its subject matter related to an issue which should not have been submitted, is untenable.

JOHNSON, J., not sitting.

APPEAL by plaintiff from *Crissman, J.,* at 18 June, 1956, Civil Term of CABARRUS.

Civil action to recover upon alleged contract.

Plaintiff alleges in his amended complaint: (2) That on or about 6 August, 1953, defendant executed a paper writing in words and figures as follows:

"8-6-53

"I owe Bill Mabrey $1538 for plumbing and heating in house on Kannapolis Road.

"I agree to Ed Deaton $1000.00 of this amount when I pay off.

(Signed)　Lewis D. Cole
　　　　　　Sept. 10-53
　　　　　　Bill Mabry."

(3) That co-temporaneously with the execution of the foregoing paper writing and at the special instance and request of defendant, plaintiff advanced and paid to Bill Mabry the sum of $1,000.00 in sole reliance upon the promise of defendant to repay to plaintiff said amount; and that defendant promised and agreed to repay same on or about 10th day of September, 1953,—which (4) defendant has refused to do after payment demanded.

Defendant, answering, denies each of these allegations of the amended complaint, except he admits that he has refused to repay plaintiff anything on his alleged claim.

And for further answer and defense, defendant avers: (1) That prior to 10 September, 1953, Bill Mabry had contracted and agreed with defendant to do the plumbing and heating work on a house on which defendant was general contractor; that plaintiff and Bill Mabry came to see defendant and asked that he agree to pay to plaintiff $1,000.00 of the amount to be earned by Mabry under the sub-contract for a past indebtedness due to plaintiff by Mabry; that defendant agreed that whenever Bill Mabry completed the plumbing and heating work in accordance with the sub-contract, and defendant was ready to settle with Mabry, in accordance with the sub-contract, defendant would pay to plaintiff $1,000.00 of the amount earned by Mabry, if he and Mabry so desired; (2) that Mabry failed and refused to comply with said sub-contract and defaulted on same, and defendant is not indebted to him in any amount by reason of the sub-contract; and that it became necessary for defendant to engage and pay someone else to do the plumbing and heating work; (3) that Mabry was adjudged a bankrupt by the U. S. District Court on 4 December, 1953, etc., (4) that "defendant received no consideration from plaintiff or from Mabry for his agreement to pay plaintiff rather than Mabry when Mabry complied with his contract;" "(5) that the purported agreement was not written with sufficient definiteness to comply with the Statute of Frauds (G.S. 22-1) and is not enforceable, which is hereby expressly pleaded in bar of any recovery by plaintiff herein."

Upon trial in Superior Court, plaintiff, as witness in behalf of himself, testified in pertinent part as follows:

"I am a contractor. I did not know the defendant until the 6th day of August, 1953, when I first met him. I know Bill Mabry and had known him six or seven years. On the 6th of August, Mr. Coble came to Bill Mabry's shop . . . Mr. Mabry, Mr. Coble and I had a conversation that day. Bill said he wanted to borrow $1,000.00, would Mr. Coble sign for it? He was sitting in back of the car and Bill wrote it out and Mr. Coble signed it, and I gave him the money . . . currency, $100 bills . . . I have seen that piece of paper before. Mr. Mabry's signature is at the bottom. Mr. Coble signed it, Lewis G. Coble . . ."

Plaintiff then offered in evidence the paper writing described in the amended complaint as hereinabove set forth.

Then the plaintiff continued: "At that time Mr. Mabry, Mr. Coble and I discussed the matter as to approximately when amount was to be paid, which was to be in about three months . . . and around three I called Coble. He said he hadn't collected any money. In a few weeks I called him again . . . At that time Mr. Coble did not deny that he owed me money. At the time that paper was written and signed and a $1000 in bills was passed by me to Mabry, Mr. Mabry did not owe me any money. Mr. Mabry has never paid me any part of that $1000.00 . . ."

Then under cross-examination plaintiff continued, in pertinent part, as follows: ". . . Mr. Mabry and I were in an automobile at Mr. Mabry's shop on the occasion that we are talking about. Mr. Coble came up . . . I did not know anything at that time about Mr. Coble building a house . . . until Bill told me. . . . Mr. Mabry did not tell me he was building; said he was having a fellow to come by there and he needed the money and if I'd sign a statement without any, and I said 'Yes.' Mr. Coble did not say anything about that plumbing work having been finished at the time the statement was signed. I know that Mr. Klutz is the one who finished the plumbing work. I . . . don't know what Mr. Mabry had done about the plumbing work."

And the plaintiff continued under cross-examination: "The money changed hands when Mr. Coble was there, right after Mr. Coble signed. Mr. Coble did not tell me that if he owed anything to Mr. Mabry because of the plumbing, from what he owed Mabry, he would give me a thousand dollars. He signed the statement just like it reads and that is all. I do not know how long after that it was before Mr. Mabry went into bankruptcy. I did not file any kind of claim in bankruptcy against Mr. Mabry. I gave the money to Mr. Mabry. I have never tried to collect that amount from Mr. Mabry. This particular paper was not already written before Mr. Coble got over there. It wasn't sometime later that Mabry signed it. It was mentioned that in about three months the work would be finished and Mr. Coble would pay off. That date is 8/6/53. Underneath 'Coble' is 'September 25, 1953.' Underneath that 'Bill Mabry.' Both of those dates were put in there at the same time. I guess they were. I know that, I saw it. I cannot explain why two different dates were put there . . . It was after Bill Mabry went into bankruptcy that I got in touch with Mr. Coble, and said something to him about the money."

Then on re-direct examination plaintiff testified: "I gave the cash to Mr. Mabry." And on re-cross-examination he concluded: "That is my signature on that paper . . . the original complaint which I filed in this case. I did not allege in it that I advanced the thousand dollars

DEATON *v.* COBLE.

to Coble . . . I didn't know what all was in it . . . It says there I gave the money to Coble, but I didn't give any money to Coble; and he did not get any money out of the transaction, not that day."

Then Bill Mabry, as witness for plaintiff, testified in pertinent part: "I am a plumber engaged in the plumbing business, and was so engaged in August 1953. I had a conversation on August 6, 1953, with Ed Deaton and Lewis Coble . . . at the shop. I had been doing some work for Lewis Coble, couple of jobs, prior to the time I had the conversation with Coble and Deaton . . . I told Coble I wanted him to come by there . . . I wanted him to borrow some money from Ed Deaton, would he sign for a thousand dollars. He said 'Yes.' . . . He read the paper and signed it . . . Ed gave me the money, a thousand dollars. At that time Mr. Deaton did not owe me any money, and I did not owe Mr. Deaton any money. That is my handwriting on Exhibit A (the paper writing sued on) . . . I signed it . . . I saw Mr. Coble sign that paper. We were all three in the car. I received the money from Mr. Deaton when we signed it or when we left; Deaton paid me."

Then the witness Mabry continued under cross-examination: "Mr. Coble had asked me to do the plumbing work on a house that he was building before this time. I had agreed to do the plumbing work." Then over objection and exceptions by plaintiff, numbered 2 to 14, both inclusive, the witness was permitted to testify that at this time he had actually just started the work, just roughed it in; that he was obligated to put in the furnace and heating plant, but he hadn't completed that work at the time the paper was signed; that Mr. Deaton knew that; that he did not strike a lick of work on this house after that date; and that he didn't go back to the job after the paper was signed."

Then the witness Mabry continued under cross-examination: "It was more than two months after that before I went into bankruptcy. It was about the 4th of December . . . Mr. Deaton has never asked me for this thousand dollars or to pay him back . . . I did not give Mr. Coble any of that thousand dollars, I wasn't supposed to. That was between me and Mr. Deaton. I have never paid back the thousand dollars; I am not supposed to. No, I have never paid it."

Here plaintiff rested his case, and motion of defendant for judgment as of nonsuit was overruled, and defendant excepted. And defendant offered no evidence and rested his case, and renewed his motion for judgment as of nonsuit. Motion was overruled and he excepted.

Then under charge of the court the case was submitted to the jury, without objection, upon these issues, the first three of which were answered as shown, and the last two were not answered:

"1. Did the defendant execute the paper writing referred to in the complaint? Answer: Yes.

7—245

"2. Did the defendant promise to repay plaintiff for money he advanced? Answer: No.

"3. If so, did plaintiff advance money to Bill Mabry in reliance thereon? Answer: No.

"4. Did defendant breach his promise to plaintiff?  Answer:

"5. In what amount, if any, is the defendant indebted to the plaintiff? Answer:"

Judgment was signed in favor of defendant.  Plaintiff excepted thereto, and appeals to Supreme Court and assigns error.

*C. M. Llewellyn and M. B. Sherrin for Plaintiff Appellant.*
*John Hugh Williams for Defendant Appellee.*

WINBORNE, C. J.   The statute of frauds, G.S. 22-1, in pertinent part provides that "no action shall be brought . . . to charge any defendant upon a special promise to answer the debt, default or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party charged therewith . . ."

Testing the paper writing sued on by the provision of this statute, it is seen that it lacks the essential of a "special promise to answer the debt . . . of another person" the plaintiff.  The second sentence is incomplete, and uncertain in meaning.  Thus there is no written special promise.  Hence an action may not be maintained on it.

Moreover, exceptions to the testimony of the witness Mabry brought forward as basis for assignments of error are without merit.

It is erroneously contended that the paper writing is unambiguous, and hence the meaning of it is a matter of law to be determined by the court, and it cannot be varied, modified or added to by parol evidence. But the parol evidence rule is inapplicable.  This rule presupposes the existence of a legally effective written instrument.  It does not in any way preclude a showing of facts which would render the writing inoperative or unenforceable.  Stansbury North Carolina Evidence, Sec. 257, p. 519.

Furthermore, when the portions of the charge to which exceptions are taken are considered in context, it is seen that they are without merit.  Likewise the ground upon which exception is taken to the failure of the court to properly charge the jury as required by G.S. 1-180 is without merit.  Appellee suggests, in brief filed here, that in these exceptions appellant is actually complaining because of the subject matter and submission of the second issue which left to the jury the determination as to whether defendant promised to repay plaintiff.

Be that as it may, the record fails to show that the issues submitted were objectionable to the parties.

Some of the assignments of error appear to have been abandoned. But, in any event, due consideration has been given to all assignments of error, and in the judgment from which plaintiff appeals there appears to be

No error.

JOHNSON, J., not sitting.