**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-2232**

STANLEY MARVIN CAMPBELL, Trustee in Bankruptcy for ESA
Environmental Specialists, Inc.,

Plaintiff,

and

PROSPECT CAPITAL CORPORATION,

Plaintiff - Appellant,

v.

ADKISSON, SHERBERT & ASSOCIATES,

Defendant - Appellee,

and

NATHAN M. BENDER; HOULIHAN SMITH & COMPANY, INC.; CHARLES J.
COLE; JACOB COLE; SANDRA DEE COLE; DAVID C. EPPLING; MICHAEL
ANTHONY HABOWSKI; TRACEY HAWLEY; JOHN M. MITCHELL; DENNIS M.
MOLESEVICH; HOULIHAN SMITH; SHELTON SMITH; SUNTRUST BANKS,
INC.; CHERRY BEKAERT AND HOLLAND LLP; ELLIOT & WARREN;
CHESTER J. BANULL,

Defendants.

**No. 12-2264**

STANLEY MARVIN CAMPBELL, Trustee in Bankruptcy for ESA
Environmental Specialists, Inc.,

Plaintiff,

and

PROSPECT CAPITAL CORPORATION,

             Plaintiff – Appellee,

        v.

ADKISSON, SHERBERT & ASSOCIATES,

             Defendant – Appellant,

        and

NATHAN M. BENDER; HOULIHAN SMITH & COMPANY, INC.; CHARLES J. COLE; JACOB COLE; SANDRA DEE COLE; DAVID C. EPPLING; MICHAEL ANTHONY HABOWSKI; TRACEY HAWLEY; JOHN M. MITCHELL; DENNIS M. MOLESEVICH; HOULIHAN SMITH; SHELTON SMITH; SUNTRUST BANKS, INC.; CHERRY BEKAERT AND HOLLAND LLP; ELLIOT & WARREN; CHESTER J. BANULL,

             Defendants.

--------

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte.  Max O. Cogburn, Jr., District Judge.  (3:09-cv-00465-MOC-DCK; 3:09-cv-00546-MOC-DCK; 3:07-bk-31532)

--------

Argued:  September 19, 2013          Decided:  November 7, 2013

--------

Before AGEE, DAVIS, and DIAZ, Circuit Judges.

--------

No. 12-2232 affirmed; No. 12-2264 dismissed by unpublished opinion.  Judge Davis wrote the opinion, in which Judge Diaz joined.  Judge Agee wrote a separate opinion concurring in the judgment.

--------

**ARGUED:** Karl Christopher Huth, IV, PROSPECT ADMINISTRATION, LLC, New York, New York, for Prospect Capital Corporation.  Frederick Kingsley Sharpless, SHARPLESS & STAVOLA, PA, Greensboro, North Carolina, for Adkisson, Sherbert & Associates.  **ON BRIEF:** Robert

C. Bowers, MOORE & VAN ALLEN, PLLC, Charlotte, North Carolina, for Prospect Capital Corporation.

———————————

Unpublished opinions are not binding precedent in this circuit.

DAVIS, Circuit Judge:

Prospect Capital Corporation ("Prospect"), a New York-based private equity firm, made a substantial commercial loan to ESA Environmental Specialists, Inc. ("ESA"), a Charlotte, North Carolina-based environmental and industrial engineering firm. Thereafter, ESA's financial condition deteriorated rapidly and it filed a voluntary Chapter 11 petition in bankruptcy; the Chapter 11 case was soon converted to a Chapter 7 liquidation.[1]

Prospect, alleging gross misconduct by the officers and directors of ESA and several others, filed suit in the United States District Court for the Southern District of New York against a host of defendants, including Adkisson Sherbert & Associates ("ASA"), ESA's North Carolina accounting and auditing firm, against which Prospect asserted claims for professional negligence. The case was transferred to the federal district court for the Western District of North Carolina, where the ESA bankruptcy was pending.

In the North Carolina district court, Prospect and ASA entered into settlement negotiations by telephone and email. After their counsel exchanged several draft settlement

---

[1] In Campbell v. Hanover Ins. Co. (In re ESA Envtl. Specialists, Inc.), 709 F.3d 388 (4th Cir. 2013), we considered issues unrelated to those presented here arising out of the ESA bankruptcy.

agreements, Prospect refused to sign. This prompted ASA to move the court to enforce an alleged oral settlement agreement, and for an order of dismissal and an award of attorney's fees.

After conducting an evidentiary hearing, the district court rendered findings of fact and conclusions of law, holding that (1) the parties had indeed reached a binding and enforceable oral settlement agreement, and (2) Prospect had not proceeded in bad faith such that an award of attorney's fees was warranted. The district court refused to dismiss Prospect's claims but it did certify its order for immediate appeal. Prospect filed a timely appeal from the district court's order, and ASA timely filed a protective cross-appeal.

Upon our review of the district court's findings and conclusions, we discern no clear error or abuse of discretion warranting the reversal of the district court's judgment. Accordingly, we affirm the judgment of the district court enforcing the parties' agreement, and we dismiss the cross-appeal.

I.

Prospect loaned more than $12 million to ESA. In its capacity as ESA's accounting firm, ASA had provided financial information to Prospect in connection with the loan. Among other claims against numerous parties, Prospect sued ASA alleging that ASA negligently provided inaccurate information about ESA's

5

financial status. On September 2, 2011, after the transfer of the case to the Western District of North Carolina, the district court ruled that Prospect's complaint failed to allege sufficient facts to state a claim against ASA but it granted Prospect leave to file an amended complaint. The district court's order also encouraged the parties to "discuss an amicable resolution" of the action. J.A. 134.[2]

A little over a week later, Prospect's counsel, H. Marc Tepper, Esq., contacted ASA's counsel, Rich Sharpless, Esq., and requested ASA's consent to a motion for an extension of time for Prospect to file its amended complaint. In the request, Tepper indicated that the parties could "utilize this time to place all our efforts toward reaching a settlement rather than the ongoing expense of litigation." J.A. 612. On October 10, 2011, the parties' attorneys discussed the possibility of a settlement and agreed to consult with their respective clients.

Prospect filed a Second Amended Complaint on October 14, 2011. Shortly afterwards, Sharpless asked Tepper to agree to an

---

[2] Citations to "J.A. ---" are to the Joint Appendix filed by the parties to this appeal. Volume II of the Joint Appendix, consisting of pages 354 through 662, are under seal, in keeping with the agreed Confidentiality Order entered by the district court during proceedings in that court on the motion to enforce settlement agreement. From time to time in this opinion, we quote from the sealed Joint Appendix to portions of the record that do not disclose confidential matters.

extension of time for ASA to respond to the Second Amended Complaint. Tepper agreed, but stated that the consent was "contingent on our furthering our settlement discussions." J.A. 613.

In due course, ASA filed a motion to dismiss the Second Amended Complaint, and Tepper sent an email to Sharpless on or about November 1, 2011, inquiring into the status of settlement efforts. After an exchange of correspondence as to the settlement amount, the parties agreed over the telephone that ASA and Cherry Bekaert & Holland ("CBH")[3], a second CPA firm that Prospect was proceeding against in North Carolina state court on similar claims, would each pay Prospect a sum certain in exchange for a dismissal of the action with prejudice. Specifically, as the district court later found, Sharpless and Tepper spoke on November 22, 2011, and agreed to settle the litigation on the following material and essential terms:

1) ASA would pay Prospect a sum certain;

2) Prospect would file a dismissal with prejudice of all claims against ASA;

3) Prospect would release ASA from any and all claims it might have against ASA;

4) The terms of the settlement would be confidential;

5) The parties would bear their own costs.

---

[3] ASA's counsel, Sharpless, was counsel to CBH as well.

7

See J.A. 608, 614, 654.

Also on or about November 22, 2011, Prospect filed a motion for an extension of time to respond to ASA's still-pending motion to dismiss. Prospect informed the court that "Prospect and ASA (collectively the 'Settling Parties') have agreed to the principal terms of a settlement agreement, but require additional time to complete the drafting and execution of the settlement agreement." J.A. 287. Prospect also stated that the "Settling Parties negotiated the material terms of the settlement . . ." Id. The court granted the motion.

On November 29, 2011, Sharpless emailed Tepper confirming the terms of the agreement. Tepper replied to Sharpless on December 1, 2011 with a draft Confidential Settlement Agreement. The draft contained the same terms that were in Sharpless's November 29, 2011, email, and included additional terms. Ultimately, the parties exchanged a total of six drafts of the document between December 1, 2011 and December 15, 2011. Prospect had included New York choice-of-law and venue provisions in the written agreement sent to ASA on December 1, 2011. ASA objected to those clauses and replaced them with North Carolina choice-of-law and venue provisions, to which Prospect raised no objection. Also, each of the drafts contained merger and integration clauses and stated that no agreement would be binding until both parties executed and delivered a signed

8

agreement. ASA proposed a few revisions to the additional terms, but never objected to the merger and integration clause or execution and delivery requirements.

On December 15, 2011, Tepper, on behalf of Prospect, emailed a "final" revised copy of the Confidential Settlement Agreement to Sharpless, asking him to "Please sign and return." J.A. 615. On December 19, 2011, Sharpless asked Tepper for the Tax Identification Number of Tepper's law firm so that ASA could issue a check for the settlement amount. Tepper emailed the Tax Identification Number to Sharpless the same day. Two days later, Sharpless, on behalf of ASA, emailed an executed copy of the written agreement to Tepper. On December 28, 2011, Sharpless mailed the settlement check to Tepper.

The next day, December 29, 2011, Prospect filed a second motion for an extension of time to oppose ASA's motion to dismiss. Therein, Prospect represented to the court that:

> 2.     Prospect and ASA (collectively the 'Settling Parties') have agreed to the principal terms of a settlement agreement, but require additional time to complete the drafting and execution of the settlement agreement.
>
> . . .
>
> 5.     The Settling Parties have concluded their settlement negotiations and now need to fully execute the Settlement Agreement.
>
> 6.     Due to the holidays, no individual with authority to sign on behalf of Prospect will be available to execute the Settlement Agreement prior to

9

the January 3, 2012, deadline to respond to ASA's Renewed Motion to Dismiss.

7. Accordingly and for the forgoing reasons, Prospect respectfully requests a ten-day extension of the January 3, 2012 deadline for Prospect to execute the Settlement Agreement and discontinue this action.

J.A. 290-91. The court granted the motion.

Alas, the new year brought a refusal by Prospect to execute the Confidential Settlement Agreement. Specifically, on or about January 17, 2012, Tepper returned the settlement check to Sharpless with correspondence stating, in part, that "Prospect Capital Corporation has not authorized me to hold on to the settlement check as its agent and has further authorized me to inform you that it will not be executing a settlement Agreement or directing our office to file a Stipulation of Dismissal as to your client." J.A. 641.

On March 30, 2012, ASA filed a motion (1) to enforce what it alleged was a binding oral agreement reached on November 22, 2011, and (2) to dismiss the case and for an award of attorney's fees. Meanwhile, CBH (the other accounting firm represented by Sharpless in connection with the settlement negotiations) filed a similar motion to enforce the settlement agreement in the state court litigation, but the state court apparently denied CBH's motion. But see infra pp. 20-21.

On August 15, 2012, the district court held an evidentiary hearing during which it heard testimony from ASA's counsel,

10

Prospect's counsel, and Prospect's corporate representative.[4] On August 30, 2012, the district court granted in part ASA's motion to enforce settlement agreement and ordered the parties to file a notice of settlement within 30 days. The court reasoned that ASA "produced considerable evidence" that demonstrated an enforceable agreement. J.A. 658. According to the court, this included several months' emails indicating that the parties continued to iron out a final agreement but that the material terms, including payment price and costs per side, mutual releases, and a confidentiality requirement, were settled during the November 22, 2011 telephone call.[5] See supra p. 7.

Addressing Prospect's contentions that the choice-of-law and venue provisions were outstanding material terms at the time of the November 22, 2011 call, the court found that Prospect's

---

[4] At a preliminary status hearing held on June 20, 2012, in response to the district court's inquiry into what happened to cause the settlement efforts to break down, Prospect's new attorney, Karl Huth, Esq., stated "[t]he problem is senior management thinks this case is worth a lot more than this proposal would have been worth." J.A. 339.

[5] In the proceedings before the district court, although Prospect did not concede Tepper's authority, it expressly and indeed, emphatically, disclaimed reliance on any argument that Tepper lacked actual authority to settle the case and bind Prospect. See J.A. 465 ("I'm saying we have not contended that he did not have authority to settle this case and that's not an issue before this court . . . . Prospect has made it clear throughout the briefing that what we are contesting is whether an agreement was ever formed. We are not contesting Mr. Tepper's authority . . . .").

11

counsel "willingly agreed to ASA's revision that North Carolina law be applicable without additional consideration from ASA." J.A. 658. Prospect's willingness to accept ASA's revision to that term, without demanding additional consideration, indicated to the court that, from Prospect's perspective, the choice-of-law and venue provisions were not material terms.

The court also found that, based on the emails and counsel's testimony, Prospect's management did not learn of the terms of the agreement until after ASA emailed the Confidential Settlement Agreement and mailed the check for full payment. It was at that time that Prospect's management refused to give assent to the terms of the agreement, specifically the settlement amount. The court concluded that "Prospect's dissatisfaction with the settlement amount, however, is simply a risk of litigation and the nature of its investment business. Indeed, it appears that Prospect had 'second thoughts,' which are insufficient to set aside the remaining agreement." J.A. 659.

The court further found that Prospect was judicially estopped from denying the existence of an agreement after it represented to the court that the parties had reached a settlement. The court held that for Prospect to now ask ASA to "begin its settlement negotiations anew . . . would clearly impose a detriment upon ASA" and "not enforcing the contract

12

would strain this court's limited resources and permit parties to stall litigation indefinitely." Id. Finally, the court declined to find ASA was collaterally estopped from raising the enforceability of the November 22, 2011 agreement based on the North Carolina state court's decision denying CBH's motion to enforce the same agreement.

The district court denied ASA's motion insofar as it sought dismissal with prejudice of Prospect's claims under Federal Rule of Civil Procedure 41(b), finding that "'dismissal other than on the merits must be supported by a finding of bad faith or other similar abuse,'" which the district court declined to find occurred on the facts here. J.A. 661 (quoting Hensley v. Alcon Laboratories, Inc., 277 F.3d 535, 542 (4th Cir. 2002)). For the same reason, the court declined to award attorney's fees to ASA.

With the case in the above posture, Prospect moved to certify the court's order as a final judgment under Federal Rule of Civil Procedure 54(b). The court granted the motion on December 10, 2012.[6] Prospect filed a timely appeal of the

---

[6] We find the district court acted appropriately in certifying its order under Rule 54(b). See Culosi v. Bullock, 596 F.3d 195, 203 (4th Cir. 2010).

13

judgment and ASA filed a timely cross-appeal from the district court's refusal to dismiss Prospect's claims.[7]

## II.

### A.

To enforce a settlement agreement under its inherent equity power, the district court "(1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." Hensley, 277 F.3d at 540-41 (citing Moore v. Beaufort Cnty., 936 F.2d 159, 162 (4th Cir. 1991)) (further citations omitted).

We review a district court's findings of fact for clear error and its decision to enforce a settlement agreement for abuse of discretion. Id. at 541 (citing Young v. FDIC, 103 F.3d 1180, 1195 (4th Cir. 1997)). A district court abuses its discretion when its decision is "'guided by erroneous legal principles' or 'rests upon a clearly erroneous factual finding.'" Brown v. Nucor Corp., 576 F.3d 149, 161 (4th Cir. 2009) (quoting Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999)). As in other contexts, we will reverse for abuse of discretion only where we have a "'definite and firm conviction that the court below committed a clear error of

---

[7] ASA does not appeal the district court's refusal to make an award of attorney's fees.

14

judgment in the conclusion it reached upon a weighing of the relevant factors.'" Brown, 576 F.3d at 161 (quoting Westberry, 178 F.3d at 261). As we have held, "[h]aving second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement, [ ], and the fact that the agreement is not in writing does not render it unenforceable." Hensley, 277 F.3d at 540 (citations and quotation marks omitted).

## B.

As its most vigorously advanced claims of error, Prospect challenges the district court's order on three closely related grounds: (1) the material terms of the settlement were not finalized during the telephone call, and therefore the alleged agreement reached during the call between Tepper, representing Prospect, and Sharpless, representing ASA, could not serve as an enforceable oral agreement; (2) the court erred in finding that the choice-of-law, venue, and release provisions were not material; and (3) the court erred in considering evidence outside the actual agreement in coming to its decision. We find no merit in any of these contentions.

## 1.

The district court found that the parties had settled on the material terms of the agreement during the phone conversation on November 22, 2011. There is no clear error in

this finding. Prospect never expressed an intention that the November 22, 2011 agreement be contingent upon the approval of its senior management. And the parties never expressly stated, nor is there evidence in the record, that their agreement was dependent on the execution of a writing. Prospect represented to both ASA and the court that a settlement had been reached. The only thing that changed between Prospect receiving the signed draft of the agreement and the settlement check, and its sending the January 17, 2012 letter informing ASA's counsel that there was no settlement, was the fact that Prospect's senior management expressed dissatisfaction with the settlement amount. Prospect largely admitted as much in a hearing before the district court.[8]

Nor was there clear error in the district court's identification of the material terms of the agreement: "ASA would pay a sum certain to Prospect; Prospect would file a dismissal with prejudice [as to] all claims against ASA; the settlement would be confidential; and the parties would bear their own costs." J.A. 654 (internal citations omitted). The court stated that the terms could be found not only in the November 29, 2011 email summarizing the parties' agreement, but

---

[8] See J.A. 339: "The problem is senior management thinks this case is worth a lot more than this proposal would have been worth."

also in the first draft of the written version, which Prospect created. The material terms were the same in both.

At bottom, as the district court and the parties recognized, the issues presented at the hearing on the motion to enforce were essentially issues of credibility. See J.A. 466 (The Court: "If the issue of authority [to settle the case] is not in here, then I've got to just decide whether -- who to believe, this gentleman or this gentleman." Prospect's Counsel: "I think that's correct, Your Honor, based on the evidence and the testimony."). Plainly, we have no basis on which to second guess the district court's factual findings.

2.

Prospect's contention that the district court erred in finding that the choice-of-law, venue, and release provisions were not material terms of the parties' agreement is equally unavailing. The district court did not err in reasoning that Prospect's quick acceptance of ASA's change of the choice-of-law and venue provisions, from New York law to North Carolina law, without further consideration, demonstrated that those provisions were not of "paramount importance" to Prospect. J.A. 658. The district court also did not err in determining that the release provision was not a material term. The parties agreed to a complete release on November 22, 2011, and after a dispute arose over the written version of the agreement as to whether

17

ESA (the debtor in the Chapter 7 liquidation) was included in the release, ASA ultimately accepted the release of ESA after expressing dissatisfaction with it only once.[9] The district court's finding that ASA was ready and willing to accept the release of ESA after mildly disputing the same is neither clear factual error nor legal error.

In advancing its contrary contention, Prospect's reliance on Chappell v. Roth, 548 S.E.2d 499 (N.C. 2001), is misplaced. In Chappell, the North Carolina Supreme Court held that a settlement agreement that lacked a release provision was not binding – but only because the negotiated agreement had a clause which required "a 'full and complete release, mutually agreeable to both parties.'" 548 S.E.2d at 500. Because the negotiation and agreement on a release was included in the terms, the court determined that the parties never had a "meeting of the minds" without that release provision. Id. Unlike in Chappell, the parties here did not condition their settlement on the negotiation of a specific release provision.

3.

Prospect also takes issue with the district court's consideration of so-called outside evidence, including the final

---

[9] Prospect had purchased most if not all of the assets of ESA in the bankruptcy proceedings.

settlement amount. Prospect's position is unpersuasive. We have specifically stated that when there is a factual dispute over the existence of a settlement agreement (the precise issue in this case), or over the agreement's terms, "the court must 'conduct a plenary evidentiary hearing in order to resolve that dispute,' and make findings on the issues in dispute." Hensley, 277 F.3d at 541 (internal citations omitted) (emphasis added). Thus, it was entirely proper for the district court to hear the evidence of the sequence of events that took place during the negotiations, as well as the settlement amounts considered and finally agreed upon.

Similarly, Prospect's reliance on the merger and integration clauses in the draft written agreement also fails. Again, the written agreement was never fully executed because Prospect did not sign it; thus, those provisions could not, and did not, guide the district court's inquiry into whether the parties reached a settlement during the November 22, 2011 telephone conference. Moreover, as ASA correctly contends, the parol evidence rule (invoked by Prospect before us) "presupposes the existence of a legally effective written instrument" and so is inapplicable here because neither party argues that the

unexecuted written agreement was binding, as Prospect never executed it. Deaton v. Coble, 95 S.E.2d 569, 572 (N.C. 1956).[10]

C.

Prospect further contends that the district court failed to give the proper collateral estoppel effect to the North Carolina state court's ruling that CBH, the second accounting firm sued by Prospect, could not enforce the very settlement agreement that the district court enforced in this case. We find no error or abuse of discretion.

We review a district court's decision on an issue of collateral estoppel de novo. Tuttle v. Arlington Cty. Sch. Bd., 195 F.3d 698, 703 (4th Cir. 1999). Federal courts must look to the law of the forum from which a judgment comes to determine its preclusive effects. Sartin v. Macik, 535 F.3d 284, 287 (4th Cir. 2008). A successful assertion of collateral estoppel under North Carolina law requires a party to "show that the issue in question was identical to an issue actually litigated and necessary to the judgment, that the prior action resulted in a final judgment on the merits, and that the present parties are

---

[10] Contrary to Prospect's contention, the district court's finding that the material terms of the oral settlement agreement are embodied in the unexecuted written agreement is not "self-contradictory." See Opening Br. at 2. One would surely expect that the essential material terms of an oral agreement would appear in the written agreement, which was, we recall, drafted by Prospect.

the same as, or in privity with, the parties to the earlier action." Id. (citing Thomas M. McInnis & Assocs., Inc. v. Hall, 349 S.E.2d 552, 556-57 (N.C. 1986)).

The district court was correct to reject the application of collateral estoppel in this instance. Fundamentally, even apart from the fact that ASA was not a party to the state court action and appears not to be in privity with CBH, Prospect has failed to show how the state court's "decision" is a final judgment on the merits.[11] North Carolina law holds that a "final judgment is one that determines the entire controversy between the parties, leaving nothing to be decided in the trial court." Ratchford v. C.C. Magnum Inc., 564 S.E.2d 245, 247 (N.C. Ct. App. 2002) (citations omitted). It is evident that the state court's decision did not fully resolve the issues between the parties. See J.A. 387, 395 (the court stating, "I am going to give you my initial impression . . . . I will try to sort all this out and get back to you."). There is not even sufficient indication in the record that the state court ruled on the motion to enforce

---

[11] We acknowledge that the courts in North Carolina, like the courts in many states and the federal courts, have allowed nonmutual offensive and defensive collateral estoppel in some circumstances. See Rymer v. Estate of Sorrells, 488 S.E.2d 838, 840 (N.C. Ct. App. 1997). We need not and do not explore that issue, as the record here reflects no final judgment on the basis of which the state court litigation might give rise to a successful invocation of collateral estoppel.

the settlement agreement. J.A. 393 (the court stating, "I am fairly confident . . . I am not going to enforce [the settlement agreement]."). Prospect fails to point to any other evidence in the record to show that the state court reached a final judgment on the merits. Without this essential element, it would be improper to apply collateral estoppel in this instance.

D.

Finally, Prospect maintains that the district court erred in invoking the doctrine of judicial estoppel to bar Prospect from arguing that no agreement existed based on the position it took in its two motions for extensions of time. Because we affirm the district court's judgment for the reasons discussed, we need not and do not consider the merits of its invocation of judicial estoppel.

III.

ASA cross-appeals and principally argues that the district court erred when it denied ASA's motion to dismiss Prospect's claims with prejudice pursuant to Federal Rule of Civil Procedure 41(b) based on the binding settlement agreement. In light of our disposition of the lead appeal, the issues raised by ASA in its cross-appeal are rendered moot and need not be addressed. Accordingly, we shall dismiss the cross-appeal.

22

## IV.

For the reasons set forth, the order of the district court granting the motion to enforce the settlement agreement is affirmed. The cross-appeal is dismissed.

No. 12-2232 <u>AFFIRMED</u>
No. 12-2264 <u>DISMISSED</u>

AGEE, Circuit Judge, concurring in the judgment:

I concur in the judgment of the majority, but write separately to express the very narrow reasoning under which I would affirm the district court's enforcement of the settlement agreement between Prospect and ASA.

First and foremost in this case, the Court must conclude whether Prospect and ASA reached a binding settlement agreement during their settlement negotiations. Under North Carolina law,[1] the formation of a settlement agreement is considered according to the established rules of ordinary contract law. Harris v. Ray Johnson Constr. Co., 534 S.E.2d 653, 654–55 (N.C. Ct. App. 2000). Prospect does not dispute that the elements of a contract are present in this case—Prospect made an offer of settlement to ASA, ASA accepted that offer, and the offer included mutual promises, i.e., consideration. See Normile v. Miller, 326 S.E.2d 11, 18 (N.C. 1985). Instead, Prospect argues that ASA's acceptance of its offer of settlement was not effective because the parties intended that the settlement agreement not be binding until both parties signed a written settlement agreement.

---

[1] The parties agree that the laws of North Carolina govern the Court's consideration of whether the parties formed an enforceable contract, and we therefore apply North Carolina law. See Smith v. McDonald, 895 F.2d 147, 148 (4th Cir. 1990).

24

Prospect's argument fails, however, because the reviewing court owes deference to the district court's finding that the parties reached agreement on the material terms of a settlement prior to Prospect's expression of intent not to be bound absent a signed writing. Prospect offers no evidence that it expressed such an intent during the November 22, 2011 phone conversation. In the absence of evidence contradicting the district court's finding that the parties agreed to the material terms of settlement on November 22, 2011 without any expression of intent that additional, binding formalities were required, I cannot say that the district court's finding was in clear error. N.C. Nat'l Bank v. Wallens, 217 S.E.2d 12, 15 (N.C. 1975) (holding that contracting parties' contemplation of "a more 'complete' document does not necessarily indicate that material portions of the agreement have been left open for further negotiation"); see also Warren v. Halstead Indus., Inc., 802 F.2d 746, 752 (4th Cir. 1986) ("It is only when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been committed that an appellate court may reverse.").

Furthermore, as the majority opinion correctly points out, Prospect conceded before the district court that the issue of whether a valid settlement was reached was an issue of witness credibility. "Absent extraordinary circumstances, we will not

25

disturb a factfinder's credibility determinations." <u>Columbus-Am.</u> <u>Discovery Grp. v. Atlantic Mut. Ins. Co.</u>, 56 F.3d 556, 567 (4th Cir. 1995) (citing Fed. R. Civ. P. 52(a)). Prospect demonstrates no such extraordinary circumstances here, and, thus, has not met its burden on appeal.[2]

I therefore concur in the majority's decision to affirm the judgment of the district court, but do so based upon this court's standard of review and Prospect's failure to submit evidence contradicting the district court's findings so as to meet that standard on appeal.

---

[2] The majority opinion further concludes that Prospect failed to demonstrate that collateral estoppel applied in this case. I agree with that determination based solely on Prospect's failure to demonstrate privity between ASA and CBH.