CHAPEL HILL SPA HEALTH CLUB, INC. v. DORIS GOODMAN

No. 875DC1074

(Filed 17 May 1988)

1. **Contracts § 6; Consumer Credit § 1— referral sales unlawful and unenforceable**

   A referral sale is a transaction in which a person is induced to purchase goods or services upon the representation that the purchaser can reduce or recover the purchase price or earn a commission by referring other prospective buyers to the seller for similar purchases. In recognition of the vast potential for deception and exploitation of the public inherent in referral sales and in furtherance of the vital state interest in protecting citizens from fraud, the legislature, by enacting N.C.G.S. § 25A-37, has condemned all referral sales contracts, declaring them both unlawful and unenforceable.

2. **Contracts § 6; Consumer Credit § 1— spa membership contract—oral referral agreement—contract to renew—one integrated transaction**

   An oral referral agreement, an option to renew, and the initial two-year spa membership contract were all parts of an integrated transaction in which the referral plan served as an inducement to purchase the initial spa membership, even though the membership contract contained an integration clause stating that no oral promises, warranties, or representations were made other than those in the contract, since each party, without objection by the other, offered testimony at trial establishing the existence and terms of both the offer to renew and the oral referral agreement; the offer to renew was executed simultaneously with the execution of the membership contract, expressly referred by number to the contract, and was delivered to defendant with the contract as part of a single transaction; and the evidence showed that the referral plan for discounting the renewal price was also explained to defendant during the same discussion and that the low-priced option to renew, coupled with the possibility of obtaining a discount for making referrals, was in fact a basis for defendant's decision to join the spa.

3. **Contracts § 7— spa membership—unenforceable referral agreement**

   There was no merit to plaintiff's contention that its contract with defendant was outside the scope of N.C.G.S. § 25A-37 because neither the price of spa membership nor the right to exercise the renewal option was contingent upon the procurement of membership prospects, since the fact that the contingency related to the price of renewal rather than the original membership was of little significance, the promise of something for nothing serving as the incentive to make a purchase.

APPEAL by defendant from *Jacqueline Morris-Goodson, Judge.* Judgment entered 7 August 1987 in District Court, NEW HANOVER County. Heard in the Court of Appeals 31 March 1988.

*Shipman & Lea, by James L. Allard, Jr., for plaintiff-appellee.*

*Legal Services of the Lower Cape Fear, by Barbara von Euler and James J. Wall, for defendant-appellant.*

BECTON, Judge.

In this action for breach of a retail installment contract for the sale of a health spa membership, the question presented is whether the contract is void, under N.C. Gen. Stat. Sec. 25A-37 (1986), as an illegal referral sale.

I

On 9 February 1987, defendant Doris Goodman entered into a contract to purchase a two-year spa membership from plaintiff, Chapel Hill Spa Health Club, Inc. (the Spa), at a cash price of $750.00. Goodman made a down payment of $50.00 and agreed to pay the balance pursuant to a "Consumer Credit Retail Installment Contract" which required 24 monthly payments of $34.03. Mr. Dee Best, the Spa's salesperson, also separately executed and gave to Goodman a written offer to renew her membership after two years at a cost of $120.00 for the third and each successive year. In addition, during their discussions prior to the execution of the contract, Best orally promised Goodman that, for every prospective customer she brought to the Spa, she would receive a $20.00 discount on the $120.00 cost of renewal.

Goodman referred several prospects to the Spa and for each she received a certificate entitling her to a $20.00 discount on the cost of renewing her membership.

Upon Goodman's failure to make any of her monthly payments, the Spa instituted this suit for the remaining amount due under the contract. As a defense, Goodman asserted that the contract was void because it violated N.C. Gen. Stat. Sec. 25A-37 which prohibits referral sales. The matter was first heard in magistrate's court, where the Spa's suit was dismissed. Following a trial *de novo* in district court, the trial judge made findings, concluded that the contract between the parties was not a referral sale, and entered judgment against Goodman for $734.92 with interest. From that judgment, Goodman appeals. We reverse.

## II

## A

[1]　Referral sales are prohibited in this state by N.C. Gen. Stat. Sec. 25A-37 which states:

> The advertisement for sale or the actual sale of any goods or services (whether or not a consumer credit sale) at a price or with a rebate or payment or other consideration to the purchaser that is contingent upon the procurement of prospective customers provided by the purchaser, or the procurement of sales to persons suggested by the purchaser, is declared to be unlawful. Any obligation of a buyer arising under such a sale shall be void and a nullity. . . .

In essence, a referral sale is a transaction in which a person is induced to purchase goods or services upon the representation that the purchaser can reduce or recover the purchase price or earn a commission by referring other prospective buyers to the seller for similar purchases. *See, e.g., State ex rel. Miller v. American Professional Marketing, Inc.*, 382 N.W. 2d 117 (Iowa 1986); *People v. Best Line Products, Inc.*, 61 Cal. App. 3d 879, 132 Cal. Rptr. 767 (1976) and cases cited therein at 913, 132 Cal. Rptr. at 789. For a detailed analysis of the operation of and problems associated with referral schemes, see Comment, *Referral Sales Contracts: To Alter or Abolish?*, 15 Buffalo L. Rev. 669 (1965-1966).

A referral sales program "relies upon the well-known fact that almost everyone wants to get something for nothing." *Commonwealth ex rel. Packel v. Tolleson*, 14 Pa. Cmwlth. 72, 321 A. 2d 664, 691 (1974), *aff'd*, 462 Pa. 193, 340 A. 2d 428 (1975). Referral sales plans, like pyramid distribution schemes and similar "endless-chain" transactions, are widely recognized as inherently fraudulent. Because there is no infinite number of purchasers for any particular product or service in any vicinity, it is mathematically impossible for most referral purchasers to qualify for the promised discounts or commissions by finding new referrals. *See, American Professional Marketing* at 121; *Tolleson* at 691; *State by Lefkowitz v. ITM, Inc.*, 52 Misc. 2d 39, 275 N.Y.S. 2d 303, 315-316 (1966); Comment, 15 Buffalo L. Rev. at 684-85.

The law of diminishing returns operates against later participants in the plan as the particular market becomes saturated and no prospects remain for them to solicit as customers. Referral schemes have been invalidated by numerous state statutes and court decisions. *See, e.g.*, Ohio Rev. Code Ann., Sec. 1345.02(D) (Anderson 1979); Minn. Stat. Ann. Sec. 325 F. 69(2) (West Cum. Supp. 1988); Mass. Gen. Laws Ann. ch. 271 Sec. 6A (West 1970); Iowa Code Ann. Sec. 714.16(2b) (West 1979); and cases discussed in Annotation, *Enforceability of Transactions Entered into Pursuant to Referral Sales Arrangement*, 14 A.L.R. 3d 1420 (1967).

In recognition of the vast potential for deception and exploitation of the public inherent in referral sales and in furtherance of the vital state interest in protecting citizens from fraud, our legislature, by enacting Sec. 25A-37, has condemned all referral sales contracts, declaring them both unlawful and unenforceable. Careful consideration of the record in this case convinces us that the referral program utilized by the Spa in its promotion and sale of a membership to Goodman violates the terms and the underlying policy of the statute and that the resulting contract is therefore void. In so concluding, we reject arguments by the Spa that its transaction with Goodman does not fall within the purview of Sec. 25A-37 because (1) neither the written offer to renew nor the oral referral agreement are part of the initial two-year membership contract which the Spa seeks to enforce, and (2) neither the price nor anything related to the two-year contract is contingent upon Goodman's procurement of prospective customers for the Spa.

B

[2]　We first address the Spa's assertion that the referral agreement and option to renew are separate from the membership contract.

The key to assessing the validity of this type of contractual arrangement, in our view, is not the number of documents involved but whether the sale contract and the referral contract are parts of a single transaction in which the latter serves as an inducement to the former. It is true that, when not prohibited by law, separation of the sale contract from the referral agreement is a commonplace feature of referral sales arrangements which may sometimes legally operate against a buyer if the enforcement

of the installment sale agreement is sought by a holder in due course with no knowledge of the contract's illegal inducement. *See generally*, Comment, 15 Buffalo L. Rev. at 673-80; Annotation, 14 A.L.R. 3d 1420. However, this is not such a case. We are not persuaded that the initial seller, who has full knowledge of all facts relating to the transaction, may avoid the consequences of the law simply by studiously avoiding any reference to the referral agreement within the sale contract.

The Spa apparently seeks to invoke the parol evidence rule by arguing that, because the membership contract contains an integration clause stating that no oral promises, warranties, or representations were made other than those in the contract, the court may not look beyond the four corners of that contract to assess its validity. However, each party, without objection by the other, offered testimony at trial establishing the existence and terms of both the offer to renew and the oral referral agreement. This evidence, though inadmissible to contradict or vary the terms of the written membership agreement, is competent to show the existence of facts which would render the writing inoperative or unenforceable, *i.e.*, that it was fraudulently or illegally procured. *See Fox v. Southern Appliances, Inc.*, 264 N.C. 267, 141 S.E. 2d 522 (1965); *Deaton v. Coble*, 245 N.C. 190, 95 S.E. 2d 569 (1956); *Parker v. Bennett*, 32 N.C. App. 46, 231 S.E. 2d 10, *disc. rev. denied*, 292 N.C. 266, 233 S.E. 2d 393 (1977).

Further, despite the Spa's careful efforts to separate the membership contract from all other promises made to Goodman, the record belies any assertion that they are truly distinct or unrelated. A general rule of contracts is that all contemporaneously executed instruments relating to the subject matter of the contract are to be construed together in order to determine what was undertaken and to effectuate the intention of the parties. *E.g. Yates v. Brown*, 275 N.C. 634, 640, 170 S.E. 2d 477, 482 (1969); *Matter of Sutton Investments, Inc.*, 46 N.C. App. 654, 659, 266 S.E. 2d 686, 689, *disc. rev. denied and appeal dismissed*, 301 N.C. 90 (1980). In this case, the offer to renew was executed by Best simultaneously with the execution of the membership contract, expressly referred by number to the contract, and was delivered to Goodman with the contract as part of a single transaction, all of which indicate it was intended to be an integral part of the contract. In addition, Best testified that the offer to renew was

"guaranteed" and would not be rescinded. Because an offer may be revoked at any time before it is accepted, in the absence of consideration for the promise to keep it open, *see Normile v. Miller*, 313 N.C. 98, 105, 326 S.E. 2d 11, 16 (1985), this offer, if irrevocable as represented, must necessarily have been included in the membership privileges acquired by Goodman in exchange for the purchase price. Indeed, Best also testified that, when he brought the membership contract in for Goodman to sign, he explained "all the other *benefits of membership* at the same time, *including* her opportunity or offer to renew at the rate of $120.00 for a third year." (Emphasis supplied.)

Most significantly, the evidence shows and the trial judge found that the referral plan for discounting the renewal price was also explained to Goodman during the same discussion and that the low-priced option to renew, coupled with the possibility of obtaining a discount for making referrals, was, in fact, a basis for her decision to join the Spa. All of these factors lead us to conclude that the oral referral agreement, the option to renew, and the initial two-year membership contract are all parts of an integrated transaction in which the referral plan served as an inducement to purchase the initial spa membership.

C

[3] We also reject the Spa's argument that its contract with Goodman is outside the scope of Section 25A-37 because neither the price of the membership nor the right to exercise the renewal option is contingent upon the procurement of membership prospects. The fact that the contingency relates to the price of renewal rather than the original membership is of little significance, since, in either circumstance, the promise of something for nothing serves as the incentive to make a purchase. The Spa represented to Goodman, in effect, that if she purchased the initial membership, she could then obtain an additional year or years of membership free by referring an adequate number of prospects to the Spa. This transaction clearly constitutes a "sale of . . . services . . . with other consideration to the purchaser that is contingent upon the procurement of prospective customers provided by the purchaser."

For the foregoing reasons, we hold that the contract between Goodman and the Spa constitutes a referral sale, in violation of

N.C. Gen. Stat. Sec. 25A-37, and is void and unenforceable. Accordingly, the judgment of the trial court in favor of the Spa is

Reversed.

Judges ORR and GREENE concur.