IN THE SUPREME COURT OF NORTH CAROLINA

No. 334A23

Filed 22 August 2025

GEORGE W. JACKSON, on behalf of himself and others similarly situated

v.

HOME DEPOT U.S.A., INC., CAROLINA WATER SYSTEMS, INC., and JOHN BLUM

Appeal pursuant to N.C.G.S. § 7A-27(a)(4) from an order granting plaintiff's motion for class certification entered on 4 October 2023 by Judge Edwin Wilson in Superior Court, Mecklenburg County. Heard in the Supreme Court on 23 April 2025.

*Milberg Coleman Bryson Phillips Grossman, PLLC, by Daniel K. Bryson, Lucy N. Inman, and J. Hunter Bryson; and Varnell & Warwick, P.A., by Brian W. Warwick and Janet R. Varnell; and Blossom Law PLLC, by Rashad Blossom, for plaintiff-appellee.*

*Taibi Law Group, PLLC, by Anthony D. Taibi, for defendant-appellants Carolina Water Systems, Inc. and John Blum.*

*Maynard Nexsen PC, by Lex M. Erwin; and King & Spalding LLP, by S. Stewart Haskins II, J. Andrew Pratt, and Elliott Foote, for defendant-appellant Home Depot U.S.A., Inc.*

DIETZ, Justice.

Plaintiff George Jackson purchased a home water treatment system from defendants. He later filed this putative class action lawsuit, alleging that defendants used an illegal sales promotion in violation of the North Carolina "referral statute" found in N.C.G.S. § 25A-37. The referral statute prohibits sales promotions that offer discounts or other benefits to buyers in exchange for referring prospective customers.

In this putative class action, Jackson seeks to certify a class of all people who bought a home water treatment system while defendants' sales promotion was in effect. Defendants oppose class certification on a number of grounds, including arguments that common issues of law or fact do not predominate.

As explained below, we reject defendants' central argument—that the referral statute requires buyers to prove the illegal sales promotion induced them to buy the product. We acknowledge—and Jackson concedes—that in this case an inducement requirement would create individualized fact questions and prevent class certification. But we agree with Jackson that inducement is not an element of our state's referral statute.

Inducement is, however, an element of South Carolina's referral statute. We therefore agree with defendants that the trial court erred by certifying a class including South Carolina residents whose claims are governed by the South Carolina referral statute. We therefore vacate the trial court's class certification order and, subject to our additional discussion below, remand for further proceedings.

**Facts and Procedural History**

In 2014, George Jackson bought a RainSoft home water treatment system from Carolina Water Systems, an authorized service provider for Home Depot in parts of North Carolina and South Carolina. Under its business deal with Home Depot, Carolina Water Systems received leads on prospective buyers and used the Home Depot brand name in connection with those sales, with the two businesses splitting

revenue.

When Jackson bought his RainSoft system, Carolina Water Systems was participating in a RainSoft promotion that rewarded referrals from satisfied customers. Anyone who made a RainSoft purchase could get money back for referring another potential customer to a company sales agent. A customer who provided enough referrals could receive a full refund of their RainSoft system.

When Jackson bought his RainSoft water system in 2014, he used a Citibank credit card. Two years later, Citibank brought a debt-collection action against Jackson for failure to make payments on the roughly $12,000 balance on that credit card.

In response, Jackson asserted that the debt he owed for the RainSoft system was void under a North Carolina law that prohibits certain types of so-called "referral sales." *See* N.C.G.S. § 25A-37 (2023). The parties call this statute the "referral statute." Jackson also brought third-party claims against defendants. Citibank later dismissed its debt-collection claims against Jackson. As a result, all that remained in the case was Jackson's putative class action claims against defendants.

Defendants removed the case to federal court where it worked its way to the Supreme Court of the United States before ultimately being remanded to state court. *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435 (2019). A couple years later, the Court of Appeals rejected Home Depot's argument that Jackson's claims were subject to arbitration. *Jackson v. Home Depot, U.S.A., Inc.*, 276 N.C. App. 349, 365 (2021).

With these preliminary issues resolved, Jackson moved to certify a class of all persons who bought a RainSoft home water treatment system from defendants between November 2012 and November 2016. Jackson's putative class action complaint asserted (1) a claim for a declaratory judgment that class members' obligations under their sale contracts were "void and a nullity" for violation of the referral statute; (2) a claim for return of "all consideration paid" by class members for their RainSoft systems as provided by the referral statute; and (3) a claim for unfair and deceptive trade practices.

The trial court granted Jackson's motion and certified the class, finding that the putative class met all the legal requirements of class certification and that the class action format is the superior method of adjudicating this dispute.

Defendants appealed the class certification order directly to this Court pursuant to N.C.G.S. § 7A-27(a)(4), raising a lengthy set of arguments addressing virtually every portion of the trial court's class certification ruling.

**Analysis**

I.   **Class certification criteria**

We begin our analysis by outlining the criteria for class certification. *See Surgeon v. TKO Shelby, LLC*, 385 N.C. 772, 776–77 (2024). As a threshold matter, the party seeking class certification bears the burden to show that a proper class exists, meaning "the named and unnamed members each have an interest in either the same issue of law or of fact, and that issue predominates over issues affecting

only individual class members." *Id.* at 777.

"Beyond this threshold requirement, the party seeking class certification also must satisfy a number of other certification criteria, including: (1) that the class representatives have the ability to fairly and adequately represent the interest of all class members; (2) that there are no conflicts of interest between the class representatives and the unnamed class members; (3) that the class representatives have a genuine personal interest in the outcome of the suit; and (4) that the class representatives have the ability to adequately represent class members outside of the jurisdiction; (5) that the proposed class members are so numerous that it is impractical to bring them all before the court; and (6) that it is possible to provide sufficient notice to all putative class members." *Id.*

"Once these legal prerequisites are met, the trial court may, in its discretion, certify a class." *Id.* "In evaluating whether class certification is appropriate, the trial court should consider whether a class action is superior to other available methods to adjudicate the controversy and whether the class action is likely to serve useful purposes such as preventing a multiplicity of suits or inconsistent results." *Id.* (cleaned up). "The court also should balance the potential benefits of class certification against inefficiency or other drawbacks to class certification." *Id.* (cleaned up). This inefficiency includes the possibility that "the costs of administering a class action" exceed the value to class members of a judgment in their favor. *Id.*

"This Court reviews a trial court's class certification order for abuse of

discretion." *Id.* at 776. The test for abuse of discretion is "whether a decision is manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision." *Id.* "Within this analysis, we review the trial court's conclusions of law, including its evaluation of the legal criteria to establish a class, de novo." *Id.* With this legal standard in mind, we turn to defendants' arguments in this case.

## II.  Inducement requirement under North Carolina law

Defendants first argue that one of the essential elements of a claim under the referral statute is inducement—meaning that the referral program induced the plaintiff to buy the product. Defendants contend that this inducement element is so individualized, and so fact-intensive, that it defeats the "predominance" requirement of class certification.

As noted above, class certification is appropriate only when there are common issues of law or fact that "predominate over issues affecting only individual class members." *Id.* at 777. When examining the predominance question, courts typically evaluate whether, despite common issues of law or fact, there are "individualized, fact-intensive determinations" that would ultimately force the class action to degenerate into a series of mini-trials. *See Beroth Oil Co. v. N.C. Dep't of Transp.*, 367 N.C. 333, 346 (2014). The predominance factor also fails when there are individualized issues that are "inextricably tied" to the common issues or where "the individual questions and the common questions become so intertwined and

interconnected as to make them impossible of separation." *Id.* at 344 (cleaned up).

Here, as Jackson conceded to the trial court, an inducement element would defeat the predominance prong of class certification under this precedent. It would require the court to determine whether each individual class member was induced by the referral program into buying the product—a plaintiff-by-plaintiff fact determination that could dwarf all other issues in the case.

Thus, we must examine the elements of a claim under the referral statute to determine if there is an inducement element. Surprisingly, although this referral statute has been around for half a century, no court has fully articulated its essential elements. Indeed, since the statute's enactment, this Court has never examined the statute at all. We therefore begin by construing the statute to ascertain its meaning.

The goal of statutory construction is to carry out the intent of the legislature. *Wynn v. Frederick*, 385 N.C. 576, 581 (2023). "When construing a statute, we first examine the plain words of the statute because the text of the statute is the best indicia of legislative intent." *Sturdivant v. N.C. Dep't of Pub. Safety*, 386 N.C. 939, 944 (2024) (cleaned up). "If the plain language of the statute is unambiguous, we apply the statute as written." *Id.* (cleaned up). "If the plain language of the statute is ambiguous, however, we then look to other methods of statutory construction such as the broader statutory context, the structure of the statute, and certain canons of statutory construction to ascertain the legislature's intent." *Id.* (cleaned up).

The text of the referral statute consists of two thematic parts. First, the statute defines the conduct that it renders unlawful. N.C.G.S. § 25A-37. Second, the statute provides remedies for these unlawful acts. *Id.* Relevant here, the first part of the statute prohibits the "advertisement for sale or the actual sale" of any product that includes "consideration to the purchaser" contingent on referring other potential customers:

> The advertisement for sale or the actual sale of any goods or services (whether or not a consumer credit sale) at a price or with a rebate or payment or other consideration to the purchaser that is contingent upon the procurement of prospective customers provided by the purchaser, or the procurement of sales to persons suggested by the purchaser, is declared to be unlawful.

*Id.*

The second part of the statute states that any "obligation of a buyer arising under such a sale shall be void and a nullity" and that the buyer can receive a refund of the sale price "upon tender" of the product back to the seller:

> Any obligation of a buyer arising under such a sale shall be void and a nullity and a buyer shall be entitled to recover from the seller any consideration paid to the seller upon tender to the seller of any tangible consumer goods made the basis of the sale.

*Id.*

Thus, if a sales promotion offers any form of consideration to purchasers—a lower price, a rebate, a payment, or anything else—in exchange for referring prospective customers, the referral statute renders the promotion unlawful and

renders any debt owed on the purchase void. *Id.* By its plain terms, there is nothing in the statute that requires the sales promotion to have *induced* the buyer to enter into the sale. Indeed, the statute does not even require the buyer to know that the referral promotion exists. The statute simply renders these types of sales promotions unlawful and then provides remedies for anyone who purchased the applicable good or service while that unlawful sales promotion was in effect. *Id.*

Notably, many of our sister states have similar referral statutes that contain an express "inducement" requirement. For example, South Carolina's referral statute prohibits the same types of referral promotions but provides remedies only if the purchaser "is induced by a violation of" the statute to enter into a sale. S.C. Code Ann. § 37-2-411 (2015). Tennessee's statute contains identical language. Tenn. Code Ann. § 39-17-507(b) (2018). The General Assembly could have used similar language when it drafted N.C.G.S. § 25A-37, but it chose not to. We must presume that word choice was intentional. *See Dickson v. Rucho*, 366 N.C. 332, 344 (2013).

Defendants also argue that this interpretation of the statute is absurd because the statute's purpose is to protect consumers from predatory sales practices. Defendants contend that "if a customer's decision to purchase a RainSoft system was not influenced by an actual offer of referral incentives, that customer could not possibly have been duped or otherwise harmed by mere existence of the referral program." As a result, they argue, we should not follow the "literal interpretation" of the statute and instead follow "the reason and purpose of the law."

The flaw in this argument is that "the text of the statute is the best indicia of legislative intent." *Sturdivant*, 386 N.C. at 944 (cleaned up). To be sure, we can reject the plain reading of a statute if that interpretation would "lead to absurd results." *See State v. McLymore*, 380 N.C. 185, 194–95 (2022). But a statute's plain text is not absurd because this Court can imagine an alternative that is even better at achieving what we believe the legislature intended; instead, the absurdity canon applies only when "the ordinary interpretation of a statute leads to consequences so dangerous and absurd that they could never have been intended." *McCullough v. Scott*, 182 N.C. 865, 876 (1921).

Here, even if we might question the wisdom of the statute's plain text, there are many reasons why the General Assembly could have intended for the statute to apply as written. For example, the General Assembly may have viewed referral schemes as so repugnant that it applied the statute to all purchasers to create the greatest possible deterrent effect. Or, the General Assembly may have felt that requiring buyers to prove they were induced by the unlawful referral program placed an unfair burden on consumers. Whatever the reason, the consequences of a plain reading of the statute are certainly not "dangerous and absurd." *See id.* And, of course, the General Assembly is free to amend the statute and clarify its scope if our interpretation is unintended. *See Sturdivant*, 386 N.C. at 948.

Defendants' reliance on Court of Appeals precedent is similarly misplaced. In *Chapel Hill Spa Health Club, Inc. v. Goodman*, the Court of Appeals examined

whether a health spa membership contract violated the referral statute. 90 N.C. App. 198 (1988). In its analysis, the Court of Appeals remarked that in "essence, a referral sale is a transaction in which a person *is induced* to purchase goods or services upon the representation that the purchaser can reduce or recover the purchase price or earn a commission by referring other prospective buyers to the seller for similar purchases." *Id.* at 200 (emphasis added). But *Goodman* did not hold that inducement is an element of a claim under N.C.G.S. § 25A-37. The court's discussion of a "referral sale" was not grounded in the statutory text but on the general understanding of that phrase based on decisions in other jurisdictions. *Id.* Indeed, if anything, *Goodman* supports the view that the statute contains no inducement requirement because, in its analysis, the court never examined whether the health spa's referral program induced the customer to sign up. *Id.* at 201–02.

Defendants also argue that an inducement requirement must be read into the language of this statute because "regardless of the language of any particular statute, in order to state a claim, a plaintiff must show that the allegedly unlawful conduct *caused* his harm." This is simply wrong. The General Assembly may create *statutory* remedies even where the claimants suffered no *actual* injury. *See Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*, 376 N.C. 558, 599 (2021).

In sum, N.C.G.S. § 25A-37 does not require claimants to show that the referral scheme induced them to enter into the sale. The statute renders unlawful any "advertisement for sale" or "actual sale" of a good or service that includes a covered

referral scheme. It then provides remedies for anyone who purchased the good or service subject to that illegal referral program. Accordingly, the trial court properly rejected this argument as a ground to preclude class certification.

### III.   Inducement requirement under South Carolina law

Defendants next argue that there is a predominance problem because the South Carolina class members are subject to South Carolina's referral statute, which includes an express inducement requirement. *See* S.C. Code Ann. § 37-2-411. On this issue, we agree with defendants that the class, as certified, does not satisfy the predominance test.

In its certification order, the trial court acknowledged that the class included residents of both North Carolina and South Carolina but concluded that the "claims do not differ between class members across these two states." Defendants argue that this determination is wrong and that "neither the trial court nor Jackson has offered any explanation for why *North Carolina*'s referral statute should apply to transactions that occurred in *another state*."

Frustratingly, Jackson never responds to this argument, forcing this Court to scour an incredibly lengthy record on appeal searching for any facts that might refute it. In our review of the record, we found none. We, too, are unable to explain the trial court's determination that the claims of South Carolina residents "do not differ" from those of North Carolina residents. To the contrary, there appear to be a number of reasons why these South Carolina residents cannot be subject to North Carolina's

referral statute.

First, the record suggests that most, if not all, of the South Carolina residents entered into the sales at their homes in South Carolina, where the Carolina Water Systems sales agents would make a home visit, conduct a "full sales presentation" of the water system, and then convince the homeowner to "purchase it immediately." As a result, these class members' purchases are governed by South Carolina law and the South Carolina referral statute, which contains an inducement requirement that, as Jackson has conceded, defeats the predominance prong of class certification. *See* S.C. Code Ann. § 37-2-411.

Second, although the form contracts used for the sales to South Carolina residents do not appear to contain a choice-of-law provision, we acknowledge that the actual contracts signed by these class members have not been produced by defendants. But even if there were a choice-of-law provision in those contracts that applied North Carolina law—something Jackson has not argued to this Court—that choice-of-law provision likely would not apply to these claims because the contract's initial validity would be governed by South Carolina law. *See Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428 (2000); *Davis v. Davis*, 269 N.C. 120, 124 (1967). As a result, South Carolina's referral statute would apply because it would render the sales contracts void. Moreover, like North Carolina, South Carolina generally recognizes choice-of-law provisions in contracts but will not do so if it results "in a violation of South Carolina public policy." *See Skywaves I Corp. v. Branch Banking & Tr. Co.*, 814

S.E.2d 643, 652 (S.C. Ct. App. 2018) (cleaned up). Because the referral statute is a consumer fraud provision designed to protect South Carolina residents from predatory sales practices, we think it unlikely that South Carolina's public policy would permit a contractual choice-of-law provision to supersede the statute.

Finally, even setting these issues aside, there is the separate problem of North Carolina courts recognizing out-of-state claims under our state's referral statute. North Carolina's referral statute is designed to protect people from predatory sales practices within North Carolina. *Goodman*, 90 N.C. App. at 201. If a North Carolina resident traveled to a sister state where these referral schemes were legal and entered into referral sales there, North Carolina would not have the authority to regulate or punish that out-of-state activity. *McCullough*, 182 N.C. at 877. As we explained in *McCullough*, "no law has any effect of its own force beyond the territorial limits of the sovereignty from which its authority is derived." *Id.* Thus, "every statute is confined in its operation to the persons, property, rights, or contracts, which are within the territorial jurisdiction of the legislature which enacted it. The presumption is always against any intention to attempt giving to the act an extraterritorial operation and effect." *Id.* (cleaned up).

As a result, even if we assumed that the parties agreed to apply North Carolina law to the contracts (and, again, we see no evidence of that in the record), North Carolina law would not provide a cause of action under N.C.G.S. § 25A-37 for referral sales that took place in other states. The statute applies only to referral sales that

take place within North Carolina.

In sum, the class certified by the trial court includes South Carolina class members whose claims arise under S.C. Code Ann. § 37-2-411 and would require individual trials on inducement. We must therefore vacate the trial court's class certification order because it includes class members whose claims defeat the predominance criteria for certification.

## IV.   Additional considerations on remand

As we recently explained in *Surgeon*, because we vacate the order and remand this matter due to this defect in the class certification order, "we need not address all of defendants' arguments in this appeal, many of which may be mooted by entry of a new order on remand." *See* 385 N.C. at 779. But, as was the case in *Surgeon* with respect to conflicts within the class, there are additional predominance issues in this case that "warrant further discussion to guide the trial court's analysis on remand." *See id.*

First, there are potential predominance issues with respect to Jackson's claim for the return of "all consideration paid" by class members for the RainSoft systems. Under the referral statute, to obtain the return of consideration paid, each class member must "tender to the seller" the "tangible consumer goods" that they purchased. N.C.G.S. § 25A-37. Because nearly ten years have passed since the last alleged sales to class members, this "tender" remedy could require many individualized fact determinations—most obviously, is the tendered product actually

the one that defendants sold to that class member? From the record before us, we cannot determine whether this fact question would involve "far too many individualized, fact-intensive determinations" or whether there is some efficient means of resolving it on a class-wide basis. *See Beroth Oil Co.*, 367 N.C. at 346. Thus, this "tender" remedy under the referral statute may not be amenable to class adjudication.[1]

Second, from our review of the record, it does not appear that the trial court ever examined the predominance issue with respect to Jackson's claim for unfair and deceptive trade practices, and that issue is not addressed in the class certification order. The essential elements of that claim are "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which *proximately caused injury* to plaintiffs." *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68 (2000) (emphasis added). Likewise, the remedy for an unfair and deceptive trade practices claim "is damages based on the *actual injury* suffered by the claimant." *Surgeon*, 385 N.C. at 782 (emphasis added); *see also* Alan D. Woodlief Jr., *North Carolina Law of Damages* § 29:7 (5th ed. Supp. Dec. 2024). Thus, unlike a claim under the referral statute, which involves *statutory* harm, the unfair and deceptive trade practices claim turns

---

[1] Defendants argued that this "tender" requirement is an essential element of a claim under the referral statute, but this is wrong. *See* N.C.G.S. § 25A-37. The tender option is simply an additional remedy available to buyers under the statute. *Id.* In other words, after proving that a sales promotion violated N.C.G.S. § 25A-37, buyers can obtain a judgment voiding any remaining obligations from the sale and also can choose to return the product and get a full refund.

on proof of *actual* harm suffered by the claimant.

Figuring out how each class member was actually injured by the referral promotion—if at all—and then calculating that class member's actual injuries—if at all—could cause this case to degenerate into a series of individual trials for each class member. *See Beroth Oil Co.*, 367 N.C. at 346. On remand, the court should consider this issue.

Finally, as we explained in *Surgeon*, once the trial court addresses these lingering issues on remand, it should consider whether a class action remains the superior method for adjudicating the remaining claims. In *Beroth Oil Company*, we rejected the plaintiffs' request to "bifurcate" the action and certify a class solely on the legal question of whether Map Act recordation constituted a taking, with the calculation of just compensation for plaintiffs being left to individual trials later. 367 N.C. at 336. We noted that the "usefulness of the class action" must be balanced "against inefficiency or other drawbacks." *Id.* at 346–47. Because the issue of just compensation was so intertwined with the question of whether a taking occurred, we held that the "proposed bifurcated trial is unmanageable" and that class certification was inappropriate because it could not include the damages portion of the claims. *Id.* at 347.

Here, too, after determining which class members, claims, and remedies properly can be included in the class, the trial court should consider whether, in the court's sound discretion, a class action is the superior method for adjudicating any

remaining claims or whether, as in *Beroth Oil Company*, class certification creates an unmanageable bifurcation of claims and remedies that are better pursued together in individual actions. *See id.*

## Conclusion

We vacate the trial court's class certification order and remand for further proceedings.

VACATED AND REMANDED.

Chief Justice NEWBY concurring in part and dissenting in part.

Although I agree with the majority's decision to vacate the trial court's order based on the predominance issues preventing class certification arising from the South Carolina class members and the additional significant considerations that should be addressed on remand, I disagree with the majority's conclusion that North Carolina's referral sales statute does not require a plaintiff to show inducement. Instead, I agree with what our Court of Appeals held nearly forty years ago in *Chapel Hill Spa Health Club, Inc. v. Goodman*: inducement is an element of our referral sales statute. 90 N.C. App. 198, 200, 368 S.E.2d 60, 61 (1988). In addition to indicators in the text, this Court should hold that the referral sales statute contains an inducement requirement based on this state's long reliance on *Goodman*, its compelling reasoning, and the General Assembly's apparent acquiescence to its interpretation. Any reinterpretation of section 25A-37 contrary to *Goodman* should come from the General Assembly, not the judicial branch. Therefore, I concur in part and dissent in part.

"The primary goal of statutory interpretation is to accomplish legislative intent, which, in the first instance, is discerned from the plain language of the enactment." *N.C. Farm Bureau Mut. Ins. Co. v. Hebert*, 385 N.C. 705, 711, 898 S.E.2d 718, 724 (2024) (citing *N.C. Farm Bureau Mut. Ins. Co. v. Lunsford*, 378 N.C. 181, 188, 861 S.E.2d 705, 712 (2021)). We stop at the text if the "plain language is clear

and unambiguous." *Id.* (citing *Lunsford*, 378 N.C. at 189, 861 S.E.2d at 712). "This Court may turn to other sources to determine legislative intent, including 'the spirit of the act,' only if the statute is ambiguous or susceptible to multiple interpretations." *Id.* (citing *Lunsford*, 378 N.C. at 188–89, 861 S.E.2d at 712).

Furthermore, "[w]hen the legislature chooses not to amend a statutory provision that has received a specific interpretation, we assume lawmakers are satisfied with that interpretation*." Brown v. Kindred Nursing Ctrs. E., L.L.C.*, 364 N.C. 76, 83, 692 S.E.2d 87, 92 (2010) (citing *Wells v. Consol. Jud. Ret. Sys.*, 354 N.C. 313, 319, 553 S.E.2d 877, 881 (2001)). This Court has employed the doctrine of legislative acquiescence for over eighty years. *See City of Raleigh v. Mechs. & Farmers Bank*, 223 N.C. 286, 292, 26 S.E.2d 573, 576 (1943) (stating because the legislature did not act on this Court's previous interpretation of a statute, "[o]bviously the law on this point was regarded as settled"). Throughout this time, we have found that "[s]uch legislative acquiescence is especially persuasive on issues of statutory interpretation." *Brown*, 364 N.C. at 83, 692 S.E.2d at 92. Thus, the longer an appellate court's decision stands without legislative modification, the stronger the presumption of legislative acquiescence becomes. *See Polaroid Corp. v. Offerman*, 349 N.C. 290, 303, 507 S.E.2d 284, 294 (1998) ("We further reiterate that 'long acquiescence in the practical interpretation of a statute is entitled to great weight in arriving at its meaning.' " (quoting *State v. Emery,* 224 N.C. 581, 587, 31 S.E.2d 858, 862 (1944)), *abrogated on other grounds by Lenox, Inc. v. Tolson*, 353 N.C. 659, 548

S.E.2d 513 (2001).

> The advertisement for sale or the actual sale of any goods or services (whether or not a consumer credit sale) at a price or with a rebate or payment or other consideration to the purchaser that is contingent upon the procurement of prospective customers provided by the purchaser, or the procurement of sales to persons suggested by the purchaser, is declared to be unlawful. Any obligation of a buyer arising under such a sale shall be void and a nullity and a buyer shall be entitled to recover from the seller any consideration paid to the seller upon tender to the seller of any tangible consumer goods made the basis of the sale.

N.C.G.S. § 25A-37 (2023).

Until this case, this Court had not interpreted the referral sales statute. The majority is clearly correct that, unlike some—but not all—of our sister states, the statute's plain text does not expressly use the word "induce" or any of its variants or synonyms. That does not necessarily mean, however, that the statute's plain text does not signal an inducement requirement.

For instance, the phrase "sale . . . *at* a price or *with* . . . consideration to the purchaser" implies a particular temporal relationship between the sale and the favorable price or other consideration the buyer receives. *Id.* (emphases added). In other words, the agreements to purchase and to provide referral compensation must temporally coincide in a single transaction to constitute a referral sale, triggering the statute's application. *See Referral Sales Contract*, Black's Law Dictionary (12th ed. 2024) ("A dual agreement consisting of an agreement by the consumer to purchase

goods or services (usu[ally] at an inflated price) and an agreement by the seller to compensate the consumer for each customer (or potential customer) referred to the seller."); *see also* Douglas C. Dodge, *Referral Sales Contracts: To Alter or Abolish?,* 15 Buff. L. Rev. 669, 673–80 (1966) (describing the structure of a referral sales transaction). This is because a referral sale is a single transaction made up of two contracts, the contract of sale and the referral contract, "in which the latter serves as an inducement to the former." *Goodman*, 90 N.C. App. at 201, 368 S.E.2d at 62.

Other portions of the statutory text suggest this interpretation. Indeed, consider the contingent relationship between the first and second phrases of the first sentence:

> [(1)] The advertisement for sale or the actual sale of any goods or services (whether or not a consumer credit sale) at a price or with a rebate or payment or other consideration to the purchaser *that is contingent upon* [(2)] the procurement of prospective customers provided by the purchaser, or the procurement of sales to persons suggested by the purchaser, [(3)] is declared to be unlawful.

N.C.G.S. § 25A-37 (2023) (emphasis added). Said differently, the purchaser enters into the sale contract because of the referral contract; thus, the advertisement for the sale or sale contract being offered by the seller to the purchaser "is contingent upon the procurement of prospective customers provided by the purchaser." *See id*. Since contingent means "dependent on, associated with, conditioned by something else," *Contingent*, Webster's Third New International Dictionary (1971), the referral sales statute could be read to bar a purchaser's sale contract or the advertisement for the

sale from being dependent on the referral contract from the seller. This would create an inducement requirement within the statute's text.[1] Thus, just because the text does not specifically use the word "induce" or any of its variants or synonyms does not mean that there is no inducement requirement.

Furthermore, when our Court of Appeals interpreted section 25A-37 in *Goodman*, it concluded that the statute included an inducement requirement. 90 N.C. App. at 200, 368 S.E.2d at 61. The majority references *Goodman*, but it does not capture its full scope or how the Court of Appeals analyzed the referral sales statute. In that case, the defendant entered a contract for a spa membership with an offer to renew the membership after two years, but "during their discussions *prior to the execution of the contract*, [the plaintiff's salesperson] orally promised [the defendant] that, for every prospective customer she brought to the [plaintiff] Spa, she would receive a . . . discount on the . . . cost of renewal." *Id.* at 199, 368 S.E.2d at 60 (emphasis added). After the defendant failed to pay her membership fees, she

---

[1] The basic elements of any contract are mutual assent—i.e., offer and acceptance—and consideration. *E.g.*, *Lannan v. Bd. of Governors*, 387 N.C. 239, 250, 913 S.E.2d 163, 171 (2025). Implicit in these fundamental elements of contract formation is the offeror's attempt to convince the offeree to accept the offer—that is, to persuade the offeree to agree to the proposed bargain. Indeed, by placing an offer on the table, the offeror hopes that the offeree will feel moved or inspired to accept. In other words, the offeror hopes to *induce* the offeree to form the contract. Thus, when section 25A-37 refers to "actual sale of any goods or services . . . at a price or with a rebate or payment or other consideration to the purchaser that is contingent upon the procurement of prospective customers," N.C.G.S. § 25A-37 (2023), it can be read as implicitly referring to situations where the offeree has been *induced* by the offeror's promise (albeit contingent) of a different price, rebate, payment, et cetera.

asserted the referral sales statute as a defense. *Id.* at 199, 368 S.E.2d at 61. The trial court concluded that the contract between the parties was not a referral sale and awarded judgment against the defendant. *Id.*

The Court of Appeals reversed the trial court's judgment. *Id.* It defined a referral sale as "a transaction in which a person is *induced* to purchase goods or services upon the representation that the purchaser can reduce or recover the purchase price or earn a commission by referring other prospective buyers to the seller for similar purchases." *Id.* at 200, 368 S.E.2d at 61 (emphasis added) (first citing *State ex rel. Miller v. Am. Pro. Mktg., Inc.,* 382 N.W.2d 117 (Iowa 1986); and then citing *People v. Best Line Prods., Inc.*, 61 Cal. App. 3d 879, 132 Cal. Rptr. 767 (1976)). But *Goodman* did not stop its analysis at the definition of a referral sale; it acknowledged that the General Assembly enacted the referral sales statute "[i]n recognition of the vast potential for deception and exploitation of the public inherent in referral sales and in furtherance of the vital state interest in protecting citizens from fraud." *Id.* at 201, 368 S.E.2d at 61. *Goodman* also opined upon the distinction between "referral sales" and "referral agreements":

> The key to assessing the validity of this type of contractual arrangement, in our view, is not the number of documents involved but *whether the sale contract and the referral contract are parts of a single transaction in which the latter serves as an inducement to the former.* It is true that, when not prohibited by law, separation of the sale contract from the referral agreement is a commonplace feature of referral sales arrangements which may sometimes legally operate against a buyer if the

> enforcement of the installment sale agreement is sought by a holder in due course with no knowledge of the contract's illegal inducement. . . . We are not persuaded that the initial seller, who has full knowledge of all facts relating to the transaction, may avoid the consequences of the law simply by studiously avoiding any reference to the referral agreement within the sale contract.

*Id.* at 201–02, 368 S.E.2d at 62 (emphasis added).

The Court of Appeals concluded, based on facts found by the trial court, that the referral plan at issue was mentioned "during the same discussion" and that "the low-priced option to renew, coupled with the possibility of obtaining a discount for making referrals," prompted the defendant to renew her membership. *Id.* at 203, 368 S.E.2d at 63. The court stated:

> The fact that the contingency relates to the price of renewal rather than the original membership is of little significance, since, in either circumstance, *the promise of something for nothing serves as the incentive to make a purchase.* The [plaintiff] represented to [the defendant], *in effect, that if she purchased the initial membership, she could then obtain an additional year or years of membership free by referring an adequate number of prospects to the [plaintiff] Spa.* This transaction clearly constitutes a "sale of . . . services . . . with other consideration to the purchaser that is contingent upon the procurement of perspective customers provided by the purchaser."

*Id.* (fourth and fifth alterations in original) (emphases added) (quoting N.C.G.S. § 25A-37 (1986)). Thus, the contract was a void and unenforceable referral sale. *Id.* at 203–04, 368 S.E.2d at 63.

The Court of Appeals in *Goodman* based its reasoning in part on a case decided

by the Supreme Court of Iowa, *State ex rel. Miller v. American Professional Marketing, Inc.*, 382 N.W.2d 117 (Iowa 1986). There the Supreme Court of Iowa interpreted Iowa's counterpart to our referral sales statute. *Id.* at 119. Like our referral sales statute, Iowa's statute did not include the word "induce" or any of its variants and synonyms.[2] The Supreme Court of Iowa nevertheless stated that referral sales are generally defined as when "the purchaser . . . *is induced* upon the representation that his purchase price will be reduced or that he will receive a commission for referring other prospects for similar sales to the seller." *Id.* at 121 (emphasis added) (citing *Enforceability of Transaction Entered into Pursuant to Referral Sales Arrangement,* 14 A.L.R.3d 1420, 1420 & n.1 (1967)); *see also id.* ("In a referral sales scheme, . . . [t]he prospective purchaser *is induced* to purchase by a promise that for every additional sale which he procures, he receives a commission."

---

[2] *Compare* Iowa Code § 714.16(2)(b) (1983) ("The advertisement for sale, lease or rent, or the actual sale, lease, or rental of any merchandise at a price or with a rebate or payment or other consideration to the purchaser which is contingent upon the procurement of prospective customers provided by the purchaser, or the procurement of sales, leases, or rentals to persons suggested by the purchaser, is declared to be an unlawful practice rendering any obligation incurred by the buyer in connection therewith, completely void and a nullity. The rights and obligations of any contract relating to such contingent price, rebate, or payment shall be interdependent and inseverable from the rights and obligations relating to the sale, lease, or rental."), *with* N.C.G.S. § 25A-37 (2023) ("The advertisement for sale or the actual sale of any goods or services (whether or not a consumer credit sale) at a price or with a rebate or payment or other consideration to the purchaser that is contingent upon the procurement of prospective customers provided by the purchaser, or the procurement of sales to persons suggested by the purchaser, is declared to be unlawful. Any obligation of a buyer arising under such a sale shall be void and a nullity and a buyer shall be entitled to recover from the seller any consideration paid to the seller upon tender to the seller of any tangible consumer goods made the basis of the sale.").

(emphasis added) (quoting *Commonwealth v. Tolleson*, 321 A.2d 664, 691 (Pa. Commw. Ct. 1974), *aff'd*, 340 A.2d 428 (Pa. 1975))).

The General Assembly's silence on the referral sales statute since *Goodman*'s interpretation of an inducement requirement is notable to our interpretation of the referral sales statute. *See Brown*, 364 N.C. at 83, 692 S.E.2d at 92. Over thirty-seven years have passed since *Goodman* was decided, yet the General Assembly has let stand this "specific interpretation" of an inducement requirement. *See id.* (citing *Wells*, 354 N.C. at 319, 553 S.E.2d at 881). Thus, "we [should] assume lawmakers are satisfied with that interpretation." *Id.* Since *Goodman* stood undisturbed for nearly four decades, we should grant great weight to the legislature's acquiescence to its interpretation of the referral sales statute, which includes an inducement requirement. *See Polaroid Corp.*, 349 N.C. at 303, 507 S.E.2d at 294. This Court has a long history of applying legislative acquiescence to our statutory interpretation in the past for decisions much younger than *Goodman. See, e.g., State v. Fritsche*, 385 N.C. 446, 450–51, 895 S.E.2d 347, 350 (2023) (stating that the General Assembly's silence on a twelve-year-old Court of Appeals precedent "leaves us to conclude that the General Assembly takes no issue with the Court of Appeals' interpretation"). We should do the same with *Goodman*'s longstanding interpretation of the referral sales statute today. Therefore, I would adopt the same interpretation and reasoning as the Court of Appeals in *Goodman* and the Supreme Court of Iowa in *Miller* unless otherwise indicated by the General Assembly.

The law of the State for almost four decades has been that the referral sales statute has an inducement requirement. People have relied on this understanding. Any elimination of the inducement requirement should come from the General Assembly, not the judicial branch. *See Harper v. Hall*, 384 N.C. 292, 322–23, 886 S.E.2d 393, 414 (2023) ("[T]he legislative branch of government is without question 'the policy-making agency of our government. . . .' The General Assembly is the 'policy-making agency' because it is a far more appropriate forum than the courts for implementing policy-based changes to our laws." (second alteration in original) (quoting *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 169, 594 S.E.2d 1, 8 (2004))). Although the word "induce" does not appear in the statute, the majority's interpretation would convert the understanding of the referral sales statute into a strict liability statute. Therefore, for those reasons, I would hold that the referral sales statute contains an inducement requirement. I therefore respectfully concur in part and dissent in part.